REVISED JANUARY 16, 2003

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-50455
_____

CHRISTOPHER BLACK, SR.,

Petitioner-Appellant,

versus

JANIE COCKRELL, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

Respondent-Appellee.

_____

Appeal from the United States District Court
For the Western District of Texas
_____

December 11, 2002

Before HIGGINBOTHAM, WIENER, and BARKSDALE, Circuit Judges.

Patrick E. Higginbotham, Circuit Judge:

Christopher Black was sentenced to death upon his conviction

by a Texas jury of capital murder. In February 1998, angry at the

end of his marriage, Black recorded on cassette tapes why he wanted

to kill his family, applied for the purchase of a handgun, and some

days later purchased a semi-automatic pistol. The next day he went

to the house where his wife was living. There in the presence of

Deidre Blackburn, a friend of his wife,[1] he shot his wife twelve

_____
[1] She testified that she saw Black shoot his wife and then fled to a
neighbor's house as the shooting continued.

times, his infant daughter as she sat in a high chair, and fired five rounds at point blank range into the chest of his step granddaughter, then seventeen months old. All died of the gunshot wounds. He then immediately called 911 and told a police dispatcher that he had just killed his wife, daughter, and granddaughter. Arrested at the scene, he was indicted by a Bell County grand jury for the murder of a person under the age of six years, a capital crime in Texas.

The Texas courts rejected his direct appeal and habeas attack upon his conviction and sentence. The United States District Court for the Western District of Texas in turn rejected his federal petition filed under 28 U.S.C. § 2254 on the merits and denied his request for a certificate of appealability. Today he requests from this court a certificate of appealability upon claims of ineffective assistance of counsel: that his counsel denied him the right to testify in the punishment phase or was ineffective in adopting a trial strategy with which he did not agree, and that the state trial judge denied him the right to counsel by excusing a member of the venire outside the presence of all counsel and Black. We pay the deference due the decisions of the state courts and conclude that Black has failed to make a substantial showing of denial of a constitutional right. We deny his request for a certificate of appealability.

I

2

Our standard of review is settled.  Black filed his federal habeas petition in 2001, and hence his claims are governed by the Antiterrorism and Effective Death Penalty Act of 1996.  A certificate of appealability is a prerequisite to our jurisdiction, and can be granted only upon a substantial showing that Black was denied a constitutional right, and if we conclude that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[2]

In affirming Black's conviction and sentence on direct appeal,[3] the Texas Court of Criminal Appeals rejected the second claim he presents here, the excusing of the venire member by the presiding trial judge.  Then, in a March 7, 2001 unpublished order, the Texas Court of Criminal Appeals rejected Black's collateral attack.  This order denied any relief to Black upon his first claim of ineffective assistance of counsel.  As we will explain, the state trial judge conducted an evidentiary hearing on Black's habeas petition and filed detailed findings of fact and conclusions of law, the basis for the denial of habeas relief by the Court of Criminal Appeals and its rejection of Black's claim of ineffective

---

[2] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  If we were to grant the COA, to prevail on his habeas claim Black would have to show that the denial of his claims on their merits by the Texas state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Williams v. Taylor*, 529 U.S. 362, 367, 386 (2000) (internal quotation marks omitted).

[3] *Black v. State*, 26 S.W.3d 895 (Tex. Crim. App. 2000).

assistance of counsel.

II

A claim of ineffective assistance of counsel must be judged with eyes directly upon the reality of the situation facing defense counsel at the time of the acts and not years later. This discipline best assures faithful application of the objective measure of whether the decisions of defense counsel are within the range of those a reasonably competent lawyer might have made under those same facts and circumstances. It also takes us far along in judging its prejudice, if that inquiry is required. We begin with that important setting.

Judge Joe Carroll of the 27th Judicial District Court of Bell County presided at trial and at the later evidentiary hearing on Black's state habeas petition. At the outset of the case Judge Carroll appointed Frank Holbrook and Bob Odom, criminal defense lawyers with combined experience of more than sixty years, as counsel to Black. Faced with little or nothing with which to challenge the state's case at the guilt stage, their efforts at trial were directed toward avoiding the death penalty. At the guilt phase, defense counsel worked with their eyes on the punishment phase, attempting to elicit testimony on cross that might suggest or support the picture they hoped they would later be able to paint, a picture of a man with a distinguished military record distraught over his marital problems who erupted in an episode so horrendous and self-destructive as to itself suggest

4

that it was not the act of a man likely to be dangerous in a prison environment. Their judgment was that an effort to resist a verdict of guilt would risk loss of their credibility with the jury and make more difficult the task facing them at the inevitable punishment phase. This they did, even waiving argument. The jury found Black guilty of capital murder in a matter of minutes, circled the table in the vernacular, but deliberated over seven hours before returning its answer to the three questions required to be asked at the punishment phase by Article 37.071, Texas Code of Criminal Procedure.

After the trial, Judge Carroll appointed John R. Duer as appellate counsel. Following his direct appeal, Black filed his application for a writ of habeas corpus, and on October 17, 2000, Judge Carroll conducted an evidentiary hearing. At its outset the trial judge observed: "The issues designated for hearing this morning are, one, did the applicant's attorneys refuse to allow him to testify at his trial; number two, did the applicant's attorneys follow a trial strategy that he did not consent to or agree with; and number three, did the applicant's attorneys follow a trial strategy that was forced upon him." There were three witnesses: Black, Holbrook, and Odom. Black was asked directly why he did not testify. He responded, "For several reasons. One, the attorneys were relying heavily on the testimony of Dr. Reid." Dr. Reid, a psychiatrist, testified at the punishment phase as a defense witness. Black testified that he told Holbrook and Odom that he

5

could "rebut" the testimony of his ex-wife by denying that he ever hit her, or that he used her alien status by threatening to report her to the INS; he could have denied that he pointed his gun at Deidre Blackburn, who was in the house when he shot his wife and who testified against him in the guilt stage. He also testified that he wanted to explain the tapes that had been introduced at the guilt stage, although he was unclear what his explanation would have been. Black denied that his counsel told him he had a right to testify, or that he was otherwise aware of his right to do so.

Holbrook and Odom had a very different recall of these events. Both testified that they had explained Black's rights to him at length and that he understood them; that the decision to not testify was made by Black. On November 28th, Judge Carroll filed detailed findings of fact and conclusions of law rejecting Black's version of events and finding "that the Applicant's attorneys did not refuse to allow him to testify at the guilt/innocence or punishment stage of his trial, but advised him that testifying would not be in his best interest." He also found "that the ... attorneys discussed with [Black] on more than one occasion the law of the case, the State's burden in the case, and their trial strategy; and that he understood this strategy and it was not forced upon him in any way."

These findings were adopted by the Texas Court of Criminal Appeals. In turn, the reviewing federal court was required to presume that they are correct absent any "clear and convincing"

evidence that would show otherwise.[4]   Black's first claim is without merit and reasonable jurists would not disagree with its rejection by the state court and the court below.

### III

Black claims constitutional error in Judge Carroll's decision to excuse out of his and all counsel's presence a late arriving member of the venire who asked not to serve because she was hard of hearing.  The argument is that he was thus deprived of counsel in violation of the teachings of *United States v. Cronic*.[5]   Black's counsel objected to the release of the member of the venire in their absence.  Judge Carroll immediately explained, "There was a lady that came up and couldn't hear.  And she said she had a doctor's excuse with her.  I interviewed her and determined she couldn't hear and so I let her go.  And she promised me that she would bring her excuse back.  And I am sorry that I didn't do that in the presence in here awhile ago.  It just caught me off-guard."  He later found in his habeas findings of fact and conclusions of law that "[s]ince a Trial Court has broad discretion to excuse jurors for other than economic reasons without the parties being present, the trial court did not abuse its discretion in granting a juror's request that she be excused because she could not hear out of the presence of counsel

---

[4] 28 U.S.C. § 2254(d)(2), (e)(1).

[5] 466 U.S. 648 (1984).

for either side or the applicant."[6]  The judge also pointed out that she was accompanied by a caretaker companion.  Since Black cannot show prejudice, his contention must persuade that this is a *Cronic* case and not a *Strickland* case.[7]

Black's contention relies upon a dubious principle of law.  At the least, it is by no means clearly established.  *Cronic* speaks to the absence of counsel at a critical stage of a trial.  It is not clear that here recognizing an inability of the prospective member of the venire to sit on <u>any</u> jury because of a physical disability was such a critical stage.  Judges by practical necessity summon large numbers of persons as members of a venire where they hear such petitions of delay and relief from service entirely out the presence

---

[6] Citing, *inter alia*, TEX. GOV'T CODE ANN. §§ 62.110, 62.1041(b) (Vernon 2000).

[7] We have explained:

> To sustain a claim of inadequate assistance of counsel, a defendant usually must meet the standards of *Strickland v. Washington*, [466 U.S. 668, 687 (1984)], which requires proof that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense" so gravely as to "deprive the defendant of a fair trial, a trial whose result is reliable."  "There are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *United States v. Cronic*, [466 U.S. 648, 658 (1984).] In such cases, where the defendant is constructively denied assistance of counsel, prejudice is automatically assumed and need not be proven.

*Johnson v. Cockrell*, 301 F.3d 234, 237-38 (5th Cir. 2002) (some citations omitted); *cf. Burdine v. Johnson*, 262 F.3d 336, 349 (5th Cir. 2001) (en banc) (upholding a *Cronic* claim in a case where the defendant's lawyer was asleep during parts of the trial because "[u]nconscious counsel *equates to no counsel at all.  Unconscious counsel does not analyze, object, listen or in any way exercise judgment on behalf of the client*"), *cert. denied,* 122 S. Ct. 2347 (2002).

8

of any lawyers.  This because a panel from which a petit jury will be selected is often cut from a large pool periodically summoned. That pool may be summoned and qualified for jury service by a presiding judge before an indictment is even drawn for cases to come.  Where the critical stage in a trial is reached in this progression from the first pool to the panel for a particular case is uncertain.  At the least, extending *Cronic* to this circumstance would call forth a new and *Teague*-barred rule.[8]

Requests for COA are rejected, and the judgment of the district court dismissing the petition for federal habeas is AFFIRMED.

---

[8] *Teague v. Lane*, 489 U.S. 288 (1989).