United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 15, 2004**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 03-10295

_____

JIMMY FERNANDEZ GARCIA, JR.,

Petitioner - Appellee,

versus

DOUG DRETKE, Director, Texas Department of Criminal Justice,
Correctional Institutions Division

Respondent - Appellant.

_____

Appeal from the United States District Court
For the Northern District of Texas

_____

Before HIGGINBOTHAM, DENNIS, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Jimmy Fernandez Garcia, Jr. ("Garcia") seeks habeas relief on the grounds that the State of Texas violated the Double Jeopardy Clause when it tried him for the capital murder of Jimmy Lynn Garza ("Lynn Garza") after a jury had already acquitted Garcia of the capital murder of David Moran ("Moran"). Garcia contends that collateral estoppel applies because the Moran jury allegedly determined a factual issue that precluded the Lynn Garza jury from finding him guilty of capital murder. We reject this argument, and in so doing reverse the district court's grant of habeas relief.

1

## I. FACTS AND PROCEEDINGS

The undisputed facts giving rise to these murders are as follows: Moran agreed to purchase 25 pounds of marijuana from Garcia and his three friends for $12,000. Garcia and his friends—Steven Stokes ("Stokes"), Ishmael Mendez ("Mendez"), and Raymond Bursiaga ("Bursiaga")—intended to rob Moran rather than to sell him marijuana. Garcia and his three friends (collectively "Defendants") were apprehensive about robbing Moran because Moran could retaliate against Mendez and Stokes and their families. Defendants concluded that to avoid this possibility, they would have to kill Moran after robbing him.

On the day of the planned robbery, Stokes met Moran at a restaurant, and the two agreed that the drug deal would occur at a remote location. Immediately following the meeting, Moran and his friend, Lynn Garza, drove to the location, as did Defendants. Defendants were in Garcia's automobile, with Mendez driving, Bursiaga in the front seat, and Stokes and Garcia hidden in the trunk. While en route, Stokes and Garcia passed weapons to Mendez and Bursiaga.

Upon reaching the agreed-upon location, Mendez and Moran exited their respective cars. Garcia and Stokes emerged from the trunk. While they were emerging, Bursiaga shot Lynn Garza with a revolver. Mendez attempted to shoot Moran with a shotgun, but the weapon jammed. Moran ran and hid under his vehicle, then emerged to hand Mendez the money, which Garcia retrieved and placed in the trunk. Mendez then gave the shotgun to Garcia. At that point, Mendez restrained Moran while Stokes, Bursiaga, and Garcia allegedly beat him with the gun and their fists. After the beating, Defendants got into Garcia's car and ran over the victims—Moran twice and Lynn Garza once.

Garcia was charged with the capital murders of Moran and Lynn Garza. The State first tried

2

Garcia for Moran's murder (the second murder), and then for Lynn Garza's murder (the first murder). The jury in the Moran trial was instructed to find Garcia guilty of capital murder only if: (1) Garcia killed Moran "while in the course of committing or attempting to commit the offense of Robbery of David Moran"; (2) Garcia encouraged, directed, aided, or attempted to aid Stokes, Mendez, and Bursiaga in killing Moran, and they did so "while in the course of committing or attempting to commit the offense of Robbery of David Moran"; or (3) Garcia conspired "to commit the felony offense of Robbery" with Stokes, Mendez, or Bursiaga, and in attempting to carry out that conspiracy, any one of the conspirators intentionally killed Moran. Without elaborating, the jury did not find that any of these conditions applied, instead finding Garcia guilty of the lesser-included offense of murder. The second trial used the same jury instructions for the murder and robbery of Lynn Garza. In that case, the jury found that Garcia had murdered Lynn Garza while in the course of robbing him, and so convicted Garcia of capital murder.

Garcia appealed the Lynn Garza conviction. He argued that because of collateral estoppel, the Moran verdict of the lesser-included offense of murder barred the State from trying him for the capital murder of Lynn Garza. The state court of appeals affirmed the conviction, and the Texas Court of Criminal Appeals denied his petitions for discretionary review. The Texas Court of Criminal Appeals further denied his petition for habeas review.

Garcia then sought habeas relief in federal court. A magistrate judge considered the habeas petition initially, and recommended that relief be granted based on collateral estoppel. The district court adopted the recommendation, and in doing so provided a supplemental analysis regarding the collateral-estoppel issue. The State appeals the district court's ruling.

3

## II. DISCUSSION

### A. Jurisdiction

Garcia challenges this Court's jurisdiction on the basis that the State did not procure a Certificate of Appealability ("COA"). Although Federal Rule of Appellate Procedure 22(b) provides that the State need not obtain a COA to appeal a grant of a habeas petition, Garcia argues that this rule violates the Equal Protection Clause of the Fifth Amendment. Where a habeas petition is denied in the district court, an appellate court lacks jurisdiction to hear the petitioner's appeal unless the petitioner obtains a COA. *Black v. Cockrell*, 314 F.3d 752, 754 (5th Cir. 2002). In contrast, where a habeas petitioner prevails, the State need not obtain a COA. FED R. APP. P. 22(b). This difference, Garcia argues, amounts to a disparity in the treatment of parties who are similarly situated.

Garcia's argument fails. Prisoners are not a suspect class for purposes of constitutional protection. *Wottlin v. Fleming*, 136 F.3d 1032, 1036 (5th Cir. 1998). This constitutional challenge is therefore subject only to a rational basis standard: to be permissible, the disparate treatment must merely further a "legitimate state interest." *Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Here, the COA requirement furthers a legitimate governmental interest. The apparent rationale for the disparate treatment is to preserve resources of states in defending appeals. The COA bar does not deny prisoners access to courts, but simply requires them to facially demonstrate that the appeal has merit by making a substantial showing that the state has deprived them of a constitutional right. *See* 28 U.S.C. § 2253(c). Because Congress's interest in preserving State resources is legitimate, the COA requirement does not violate the Equal Protection Clause. Consequently, jurisdiction lies for this Court to hear the State's appeal.

4

## B. Standard of Review

This court "review[s] the district court's factual findings for clear error, but review[s] issues of law de novo." *Dyer v. Johnson*, 108 F.3d 607, 609 (5th Cir. 1997) (citation omitted). Because the district court opined that the Double Jeopardy Clause prevents Garcia from being convicted for the capital murder of Lynn Garza, this Court reviews that conclusion de novo.[1] The jury's factual findings supporting that conclusion are reviewed for clear error.

Because Garcia filed his habeas petition after April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") applies to his appeal. *See Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002) (citing *Lindh v. Murphy*, 521 U.S. 320, 324–26 (1997) (noting that AEDPA applies to all federal habeas petitions filed on or after April 24, 1996)). According to AEDPA, habeas relief cannot be granted unless the challenged state court proceeding resulted in (1) "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Under subpart (d)(1) of § 2254, "unreasonable" does not mean merely incorrect. *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003). "[A]n application of clearly established Supreme Court precedent must be incorrect *and* unreasonable to warrant federal habeas relief." *Id.*

---

[1] Garcia argues that this Court should review the State's appeal under a "plain error" standard. He contends that the State failed to object to the magistrate's report that is involved with this appeal. This contention, however, lacks merit. In its notice of appeal, the State expressed that it was appealing the final judgment of the district court. In that final judgment, the district court stated that while it was adopting the final recommendation of the magistrate judge, it was doing so "on different reasoning than that recommended . . . ." For the purposes of this appeal, then, the State properly objected to the legal conclusions made by the district court. Garcia's argument is of no avail.

(internal quotations omitted); *accord Williams v. Taylor*, 529 U.S. 362, 406 (2000).

## C. Double jeopardy

Garcia argues that because the Moran jury acquitted Garcia of capital murder, the Lynn Garza conviction is a violation of the Double Jeopardy Clause. The district court accepted this argument, reasoning that the only possible way a jury could have acquitted Garcia of capital murder was to have found that there was no theft, and that if there was no theft as to the first trial, the government was barred by the Fifth Amendment from, in the second trial, prosecuting Garcia for a crime that has that same theft as a necessary element. In fact, the jury reasonably could have acquitted Garcia of capital murder because it had found that the murder of Moran did not occur during the robbery.

## 1. The district court wrongly concluded that the Moran jury must necessarily have found that no theft had occurred in order to acquit Garcia of capital murder.

Garcia relies on *Ashe v. Swenson*, 397 U.S. 436 (1970). In *Ashe*, the Supreme Court held that violating the doctrine of collateral estoppel in a criminal case violates the Double Jeopardy Clause. *Id.* at 445. The facts of *Ashe* are as follows: a few masked men robbed a group of people playing cards. *Id.* at 437. The state tried a man for the robbery of one of the card players; the jury acquitted the man because the evidence was insufficient to find that he was one of the masked perpetrators. *Id.* at 439. The state then tried the same man for robbing a different card player in the group; this time the jury convicted. *Id.* at 439–40. The Supreme Court held that this second trial violated the Double Jeopardy Clause. *Id.* at 445–46. The Court opined that if "an issue of ultimate fact has once been determined by a valid and final judgment," the state cannot litigate that factual issue against the same party in a subsequent criminal proceeding. *Id.* at 443, 445.

Based on this holding, Garcia contends that the State cannot prosecute him for the capital

murder of Lynn Garza because an element of that crime involves the robbery that the Moran jury necessarily acquitted him of. To find Garcia guilty of capital murder against Moran, the jury was obligated to find that he was guilty of murder and that, either directly or under the conspiracy law, the murder was committed "in the course of committing or attempting to commit" robbery. TEX. PENAL CODE ANN. § 19.03 (Vernon 1994). The Texas Penal Code defines the crime of robbery as occurring if "in the course of committing theft . . . and with intent to obtain or maintain control of the property, [a person]: (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." § 29.02(a). Texas law further provides that a person commits the offense of theft "if he unlawfully appropriates property with intent to deprive the owner of property." § 31.03(a). In the instant case, the murder conviction clearly satisfies the bodily harm element of robbery. What the Moran jury refused to find, rather, was that Garcia killed Moran in the course of appropriating the $12,000.

Moreover, the jury actually *acquitted* Garcia of capital murder. The Supreme Court has held that a jury acquittal may be implied "by a conviction on a lesser included offense when the jury was given a full opportunity to return a verdict on the greater charge." *Price v. Georgia*, 398 U.S. 323, 329 (1970); *accord Green v. United States*, 355 U.S. 184, 189–90 (1957). Such an acquittal is valid for determining whether a state has violated a defendant's constitutional right to be free from double jeopardy. *Price*, 398 U.S. at 329; *Green*, 355 U.S. at 190. In this case, the Moran jury acquitted Garcia of all three stated conditions that would have given rise to a capital-murder conviction.

Garcia bears the burden of demonstrating that the factual issue allegedly barred by collateral estoppel "was actually decided in the first proceeding." *Dowling v. United States*, 493 U.S. 342, 350 (1990). This burden requires a defendant to prove that a second jury necessarily made a finding of

7

fact that contradicted a finding of the first jury. *United States v. Gonzalez*, 548 F.2d 1185, 1192 (5th Cir. 1977) (refusing to apply collateral estoppel where a possible reason for a second jury verdict did not contravene a prior jury verdict). As the Eleventh Circuit has stated, "[w]here there is more than one possible reason for the jury's verdict, and the court 'without extrasensory perception . . . cannot say that any one is *necessarily* inherent in the verdict,' the doctrine of collateral estoppel is inapplicable, and a second prosecution using evidence of acts upon which the defendant has been acquitted is not barred." *United States v. Irvin*, 787 F.2d 1506, 1515–16 (11th Cir. 1986) (quoting *Gonzalez*, 548 F.2d at 1192). Accordingly, Garcia must show that the Moran verdict necessarily compels the conclusion that Garcia did not kill Lynn Garza while committing a robbery.

The district court concluded that the Moran jury must have found that there had not been a theft. The district court incorrectly asserted: "Because the jury found Garcia guilty of the murder of Moran, directly or under the law of parties, it necessarily found that the assaultive element of robbery had been proved. The only other element of robbery that the jury could have found absent was that Garcia, directly or under the law of parties, committed theft or attempted theft." The Moran jury, however, did not acquit Garcia of robbery; rather, the Moran jury acquitted Garcia of capital murder, which has two elements: (1) a murder, (2) committed in the course of a robbery. For capital murder, the jury would have had to find not only that a murder and a robbery had taken place, but also that there existed a nexus between the two events.

## 2. For a murder to have occurred in the course of a theft, the Moran jury would have had to find that the murder occurred during or in the immediate flight from the theft.

Texas law requires that for a robbery to occur, a person must commit an assault while "in the course of committing a theft." TEX. PENAL CODE ANN. § 29.02(a) (Vernon 1994). The Penal Code

8

further defines "in the course of committing" as meaning "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." § 29.01(1); *accord Garrett v. State*, 851 S.W.2d 853, 856 (Tex. Crim. App. 1993) (defining a capital-murder robbery to mean "conduct occurring in an attempt to commit, during the commission, or in the *immediate flight* after the attempt or commission of the offense") (emphasis added).

The Moran jury easily could have inferred that the theft was complete when Garcia placed the money in the trunk. As stated above, the Texas Penal Code defines "theft" as occurring when a person "unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE ANN. § 31.03(a) (Vernon 1994). The plain meaning of "appropriation" is "[t]he exercise of control over property; a taking of possession." BLACK'S LAW DICTIONARY 98 (7th ed. 1999). When Garcia placed the money in the trunk, he had taken possession of it, exercising complete physical control over it. It appears reasonable to infer that the theft was complete at that point.

The issue of immediate flight tends to be a more subjective assessment. In the context of robbery, "[n]either the penal code nor case law defines 'immediate flight.'" *Oggletree v. State*, 851 S.W.2d 367, 369 (Tex. App. 1993). Instead, courts have examined whether a jury verdict accords with "one continuous criminal episode." See, e.g., *Newland v. State,* 882 S.W.2d 659, 662 (Tex. App. 1994); *Oggletree*, 851 S.W.2d at 369. Courts determine whether a defendant's conduct constitutes one continuous criminal episode on a case-by-case basis. *See Newland,* 882 S.W.2d at 662 (reasoning that any rational trier of fact could have determined that the use of a weapon after the theft occurred during the robbery because there were no "intervening circumstances"); *Oggletree*, 851 S.W.2d at 368, 370 (determining that "in the light most favorable to the verdict," the evidence supported the finding that the defendant used his weapon while in flight); *Thomas v. State*, 708

9

S.W.2d 580, 581 (Tex. App. 1986) (holding that the circumstances permit a rational trier of fact to determine that the disputed assault occurred during the "immediate flight").

Although this case law is helpful in setting forth factual circumstances for determining whether a general jury verdict supports a finding of a continuous criminal episode, the authority is devoid of any instances examining a jury verdict that arrived at an opposite finding. The fact that this issue is *res nova* under Texas law is not surprising. For obvious reasons, defendants do not challenge on appeal verdicts which find that an intervening event *was* sufficient to end the robbery. For constitutional reasons, the State cannot appeal such a verdict.[2] Thus, case law offers little guidance for judging whether a specific factual circumstance is sufficient to infer that a robbery was complete at a specific point in time.

Texas courts have discussed a few common themes when examining whether a criminal episode *was* continuous. One pivotal consideration appears to be whether an intervening event occurs. *See Newland*, 882 S.W.2d at 662; *Oggletree*, 851 S.W.2d at 370; *Triplett v. State*, No. 14-95-00019-CR, 1996 WL 100057, at *3 (Tex. App. March 7, 1996); *Thomas v. State*, 708 S.W.2d 580, 581 (Tex. App. 1986). An "intervening" event denotes an event that produces an effect or result. BLACK'S at 212, 826. Another consideration is whether the alleged different incidents are discrete. *See Oggletree,* 851 S.W.2d at 369; *Cravin v. State*, No. 14-96-01060-CR, 1999 WL 351162, at *3 (Tex. App. Jun 3, 1999). A "discrete" event denotes an event that is separate and distinct from another event. BLACK'S at 479. Finally, considerations of temporal and proximate

---

[2] Challenging a verdict on sufficiency of evidence grounds violates the Double Jeopardy Clause. *See United States v. Leach*, 632 F.2d 1337, 1341 n.12 (5th Cir. 1980) (discussing the Double Jeopardy Clause and stating that "[j]ury nullification—the right of a jury to acquit for whatever reasons even though the evidence supports a conviction—is an important part of the jury trial system guaranteed by the Constitution").

circumstances appear relevant in determining whether a criminal episode is continuous. *See Thomas*, 708 S.W.2d at 581 (defining "immediate" to mean "[a] reasonable time in view of particular facts and circumstances" and considering the fact that the theft and detention occurred in the same building); *Rabb v. State*, 681 S.W.2d 152, 154 (Tex. App. 1984) ("[V]iolence accompanying an escape *immediately after* an attempted theft can constitute robbery.") (emphasis added).

**3. The Moran jury reasonably could have determined that the robbery was over when Moran was murdered.**

In *Ashe*, the Supreme Court stated that an appellate court should review a prior general jury verdict of acquittal with "realism and rationality." *Ashe v. Swenson*, 397 U.S. 436, 444 (1970). This approach

> requires a court to examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. The inquiry must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal.

*Id.* Our inquiry into the potential rationale of the first jury, then, may entail an expansive exploration of the record, but must stay within the bounds of a rationale inquiry.[3]

The act of placing money in the trunk is both an intervening and discrete event. It is intervening in the sense that it produced the effect of relieving Garcia of any concern over possession of the money. It is discrete because it is a definitive action that is factually distinct from the action

---

[3] The district court rejected the line of reasoning being pursued by this court when the argument was presented by the government, stating that "the timing of Moran's murder was not at issue in the Moran trial." This approach neglects the searching assessment dictated by *Ashe*. 397 U.S. at 444.

11

of killing.

Moreover, the Moran jury reasonably could have believed that Defendants completed the robbery before killing Moran. Garcia and the other Defendants perhaps killed Moran only because he witnessed the robbery and murder of Lynn Garza. After Moran gave Garcia the stolen money, Garcia placed it in the trunk of his car. At that point in time, the robbery was completed, and the subsequent killing of Moran was for the purpose of eliminating him as a witness rather than in furtherance of the theft. Garcia's own confession, the state claims, supports this understanding; Garcia stated: "We had no intentions of killing these guys *but one got killed so both got killed*." (emphasis added). This statement implies that Garcia believed it necessary to kill Moran, not for the purpose of robbery, but rather because Defendants already had killed Lynn Garza.

Although *Ashe* requires that this Court view the evidence with "rationality and realism," 397 U.S. at 444, this standard must be considered under the AEDPA standard for challenging a jury's factual finding—*i.e.*, the finding must be "an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2) (West Supp. 2004). The inference that the Moran robbery was completed before Garcia killed Moran does not rise to the level of unreasonableness. Because a reasonable body of evidence supports the this factual inference of the first jury, this Court will not entertain the reversal of the second jury's verdict under double jeopardy grounds.

## III. CONCLUSION

For the foregoing reasons, we REVERSE the decision of the district court. Garcia's petition is remanded to the district court with instructions to DENY.

12