# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 21, 2011

No. 10-60600

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

NICK C. TRAN,

Defendant – Appellant

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:08-CR-66-3

Before KING, WIENER, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

After a partial acquittal in his first trial, Defendant Nick C. Tran, a pharmacist, was convicted in a second trial of charges related to the distribution of controlled substances outside the scope of professional practice. The district court denied his post-verdict motion for a judgment of acquittal or, in the alternative, for a new trial. He now appeals that denial on the grounds that: (1) his second trial violated the Double Jeopardy Clause; (2) the court erred in excluding evidence of racial bias on the part of Government investigators; and

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-60600

(3) the court erred in refusing him permission to recall a Government witness. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Nick C. Tran was a licensed pharmacist who owned and operated a business called Tran's Pharmacy in Biloxi, Mississippi. Over time, Tran's Pharmacy filled an increasing number of its prescriptions from the Family Medical Center, a medical practice operated by Drs. Thomas Trieu and Thu-Hoa Victoria Van. By 2007, the Family Medical Center accounted for ninety-eight percent of the pharmacy's controlled substance prescriptions. Prescriptions for these highly abused substances—namely promethazine with codeine (a narcotic cough syrup), alprazolam (also known by its brand name "Xanax"), and hydrocodone (also known by its brand name "Lortab")—written by Dr. Trieu and filled at Tran's Pharmacy—rose from a few hundred to seven or eight thousand between 2003 and 2007. The Family Medical Center and Tran's Pharmacy also saw a large increase in out-of-market patients, including some from neighboring Alabama.

The Drug Enforcement Agency ("DEA") began investigating the Family Medical Center and Tran's Pharmacy and eventually raided both businesses, arresting Tran as well as the two doctors. Tran was indicted on forty-three separate counts of dispensing or distributing controlled substances outside the scope of professional practice, nine counts of dispensing or distributing controlled substances outside the scope of professional practice to persons under 21 years of age, one count of conspiracy to dispense or distribute such substances outside the scope of professional practice, and one count of maintaining a place for the purpose of manufacturing, distributing, or using any controlled substance outside the scope of professional practice.

After a two-week trial in March 2010, the jury acquitted Tran of the forty-three counts alleging dispensing or distributing controlled substances outside

No. 10-60600

the scope of professional practice. However, the jury failed to reach a verdict on the conspiracy charge, the premises charge, and the nine counts concerning the dispensing or distributing controlled substances to individuals under the age of 21.

Following this partial acquittal, Tran moved on double jeopardy grounds to dismiss those portions of the indictment on which the jury failed to reach a verdict. The court denied this motion. Tran was re-indicted on the conspiracy charge, the premises charge, eleven counts of dispensing or distributing controlled substances outside the scope of professional practice to persons under 21 years of age, and eleven counts of dispensing or distributing controlled substances that were different from the forty-three counts in the previous indictment on which he was acquitted. The district court denied Tran's motion to quash this second indictment on double jeopardy grounds, and the case went to trial.

After the second jury found Tran guilty on all counts, Tran moved for a judgment of acquittal or, in the alternative, for a new trial on the following assignments of error: (1) the second trial violated his constitutional protection against double jeopardy; (2) he should have been permitted to introduce evidence supporting his theory that he was targeted for prosecution because of his ethnicity; and (3) he should have been permitted to recall a Government witness to address matters not covered during the Government's direct examination of that witness. The district court denied this motion, and Tran was sentenced to ten years' imprisonment and four years' supervised release. He now appeals from the district court's order denying his motion for a judgment of acquittal or, in the alternative, for a new trial.

3

No. 10-60600

DISCUSSION

I.    **Double Jeopardy**

Tran argues that his conviction must be reversed because his second trial violated his Fifth Amendment right to be free of double jeopardy. This court reviews *de novo* the constitutional issue of double jeopardy. *United States v. Cluck*, 87 F.3d 138, 140 (5th Cir. 1996) (per curiam).

The question whether Tran's second trial violated the Double Jeopardy Clause is governed by *Ashe v. Swenson*, 397 U.S. 436 (1970). In *Ashe*, the petitioner (Ashe) was accused of participating in the robbery of a group of poker players and was indicted for the robbery of one of the players. *Id.* at 437–38. The only contested issue at trial was whether he had actually been one of the robbers. *Id.* at 438. Ashe was acquitted, but the state later separately indicted him for the robbery of another one of the poker players. *Id.* at 439. The second jury convicted. *Id.* at 440. The Supreme Court held that the Double Jeopardy Clause incorporates the doctrine of collateral estoppel, and thereby precludes the government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial. *Id.* at 445–47. Straightforward application of this principle led to the conclusion that Ashe's second prosecution violated his constitutional protection against double jeopardy because it relitigated the conclusion—necessarily decided by the jury in the first trial—that Ashe had not been one of the robbers. *Id.* at 445.

This court has interpreted *Ashe* to require a twofold inquiry for analyzing double jeopardy claims. First, the court must determine what, if anything, the jury necessarily decided in the first trial. *Bolden v. Warden, W. Tenn. High Sec. Facility*, 194 F.3d 579, 583–84 (5th Cir. 1999). In making this determination, a court must "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that

4

which the defendant seeks to foreclose from consideration." *Ashe*, 397 U.S. at 444 (citation and internal quotation marks omitted). Second, a court must determine "whether the facts necessarily decided in the first trial constitute essential elements of the offense in the second trial." *Bolden*, 194 F.3d at 584.

Tran characterizes the first inquiry as a simple one because he alleges that he only contested one issue at trial: whether his actions were knowing or intentional. According to Tran, the jury's acquittal on the forty-three counts alleging distribution to specific persons age 21 and over was a general determination that Tran did not have the intent to distribute controlled substances outside the scope of his professional practice to anyone at any time during the relevant conspiracy period. Tran concludes that the Government is thus barred from retrying him on any charge during the time frame of the alleged conspiracy that relies on the theory that Tran's dispensations of controlled substances occurred knowingly and intentionally.

The Government argues that Tran contested more than the element of intent, pointing to Tran's arguments that the DEA agents targeted him because of his race, his challenges to the Government's use of undercover agents, and his attempts to otherwise show that the undercover agents' actions involved offensive conduct. The Government therefore suggests that the jury's acquittals as to individuals age 21 and older may have reflected a decision other than a determination that Tran lacked the intent to distribute to those persons, arguing that "it is entirely conceivable that the jurors—dissatisfied with the undercover aspect of the Government's case and unable to recall which counts were associated with the undercover agents—simply chose to vote to acquit as to all counts involving persons age 21 and over based on the assumption that DEA agents are necessarily at least age 21."

Neither of these arguments is persuasive. Because the jury failed to reach a verdict as to whether Tran participated in a conspiracy to distribute controlled

substances outside the scope of his professional practice, Tran is foreclosed from arguing that the jury thereby necessarily determined that he lacked intent to distribute such substances during the entire time frame of the conspiracy. *See Yeager v. United States*, — U.S. —, 129 S. Ct. 2360, 2366–68 (2009) (holding that a jury's failure to reach a verdict on some counts is a "nonevent" that cannot, by negative implication, inform the double jeopardy inquiry); *see also United States v. Whitfield*, 590 F.3d 325, 371–72 (5th Cir. 2009).

As for the Government's argument, this court's inquiry into the potential rationale of the jury "must proceed on the basis that the jury in the first trial acted in a legally correct manner." *De La Rosa v. Lynaugh*, 817 F.2d 259, 267–68 (5th Cir. 1987); *see also Ashe*, 397 U.S. at 444 (courts must conclude whether "a <u>rational</u> jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration" (citation and internal quotation marks omitted) (emphasis added)); *Garcia v. Dretke*, 388 F.3d 496, 504 (5th Cir. 2004) (for double jeopardy purposes, a court's analysis "must stay within the bounds of a rational[ ] inquiry"). As this court reasoned in *United States v. Leach*, 632 F.2d 1337 (5th Cir. 1980):

> Of course, the jury may have believed the Government's case and still have acquitted [the defendant]. . . . In this case, it is not inconceivable that the jury might have been offended by the number of government witnesses who had been allowed to plead guilty to greatly reduced charges in return for their testimony, and might have felt it unfair to convict [the defendant] in light of the lenient treatment received by the others. However, if we consider jury nullification as a basis on which the jury might have acquitted [the defendant] . . . we would in effect be eliminating the entire doctrine of collateral estoppel and greatly weakening the protection against double jeopardy.

*Id*. at 1341 n.12. Although Tran raised several issues unrelated to the elements of the crimes charged, we decline the Government's invitation to speculate as to any irrational reasons for the first jury's acquittals.

No. 10-60600

Instead, "[t]o determine the facts necessarily decided in [a defendant's] first trial under the first step of the collateral estoppel analysis, [a court] must examine the elements of the statutes under which [the defendant] was charged." *Bolden*, 194 F.3d at 584. The district court informed the jury that there were three elements it had to find beyond a reasonable doubt in order to convict Tran of possession with intent to distribute a controlled substance (the crime charged in the forty-three acquitted counts): (1) that the defendant distributed or dispensed a controlled substance; (2) that the defendant did so knowingly and intentionally; and (3) that the defendant distributed or dispensed the controlled substance without a legitimate medical purpose or that the defendant distributed or dispensed the drug outside the usual course of his professional practice. At trial, Tran contested only the second element regarding intent. The jury was not instructed that the DEA's use of undercover agents, the motives behind the investigation, or any other evidence or suggestion Tran raised at trial had any bearing on its determination of this second element. Therefore, the only basis on which a rational jury could have acquitted Tran on those forty-three counts was the Government's failure to prove beyond a reasonable doubt that Tran had the necessary intent to distribute as to those counts.

In denying Tran's motion for acquittal, the district court held that each charge required an independent analysis, and that the effect of each acquittal was limited to that particular individual on the particular date alleged in the indictment. Several analogous Fifth Circuit cases support this result. In *Douthit v. Estelle*, 540 F.2d 800 (5th Cir. 1976), the defendant was accused of raping a woman in three different counties within a twenty-two hour time period. The state indicted and tried him for the rapes that were allegedly committed in Williamson County, although it introduced evidence at trial as to the alleged criminal acts in all three counties. *Id.* at 802. The defendant's main defense was that the victim gave her consent. *Id.* The jury acquitted the

7

defendant by a general verdict of not guilty. *Id.* The state then tried him for the rape that was committed in Travis County, once again introducing evidence of the criminal acts in all three counties. *Id.* This time, the jury convicted. *Id.*

On appeal, the defendant argued that, because the state had introduced evidence of all the assaults during the first trial, the first jury must necessarily have found that the victim's consent extended to all of his actions throughout the three counties during the entire twenty-two hours. *Id.* at 804. The Fifth Circuit disagreed, holding that the acts were "not only separate in the eyes of the law [but also] separate in point of fact, being removed from each other by considerable time, distance and circumstances." *Id.* at 805. Specifically, the issue of the consent of the victim to the assault in Travis County was a different issue, both legally and factually, from the issue of the consent of the victim to the assaults in Williamson County, which occurred the next day. *Id.* The court held that distinction to be dispositive, stating that it was "not logically or legally necessary for the first jury . . . by its general verdict of not guilty, to have decided both issues of consent in favor of Petitioner." *Id.* at 806. In other words, because the first jury could have grounded its general verdict of acquittal solely upon a finding that the victim consented to the assault in Williamson County, the state was not foreclosed from prosecuting the defendant for the assault in Travis County.

In *United States v. Griggs*, 651 F.2d 396 (5th Cir. Unit B July 1981), the defendant was indicted on three separate counts of passing counterfeit bills. At trial, he averred that he was unaware that the bills were counterfeit. *Id.* at 398. The court granted the defendant's motion for directed verdict on one of the counts, and the jury acquitted on the other two. *Id.* Subsequently, the defendant was re-indicted on one count of conspiracy, two counts of sale, one count of possession, and one count of attempt to pass counterfeit bills. The attempt count was predicated on the same transaction on which the defendant

had received a directed verdict in the first trial. *Id.* The defendant moved to dismiss the indictment on double jeopardy grounds. *Id.* The Fifth Circuit held that, while the attempt count was barred, the counts alleging conspiracy, sale, and possession of counterfeit bills were not barred by the doctrine of collateral estoppel because "it is entirely possible that the defendant had the requisite knowledge on one occasion and not on another . . . ." *Id.* at 400 (internal quotation marks omitted).

Like the issues of consent in *Douthit* and knowledge in *Griggs*, the issue of intent in this case is a separate inquiry as to each count. Each of the forty-three counts alleged that Tran illegally distributed drugs to a particular person on a particular date. By acquitting Tran on these forty-three counts, the jury necessarily determined that Tran lacked intent to illegally distribute drugs to specific persons as identified on specific dates. However, this conclusion does not constitute a determination that Tran lacked intent to illegally distribute drugs to other persons on other dates. The forty-three acts charged in the first trial were separate in the eyes of the law as well as being separate in point of fact from the twenty-two acts charged in the second trial, "being removed from each other by considerable time . . . and circumstances." *Douthit*, 540 F.2d at 805. Tran therefore fails to carry his burden to demonstrate that "the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Dowling v. United States*, 493 U.S. 342, 350 (1990).

The second step in the *Ashe* analysis is to decide whether the Government seeks to relitigate the conclusion necessarily reached by the first jury through any of the charges brought in the second trial. *Accord Bolden*, 194 F.3d at 584. We hold that it does not. Charging Tran with new counts of distribution based on specific and unique transactions not listed in the first indictment does not require relitigation of Tran's intent as to those transactions that <u>were</u> charged in the first indictment. Furthermore, the first jury's acquittals did not

No. 10-60600

necessarily rest on a finding that Tran did not participate in a conspiracy or on a finding that he did not maintain a premises for the illegal distribution of controlled substances. Finding that Tran conspired to distribute such controlled substances, and finding that he maintained a premises for the distribution of such substances, are not inconsistent with the first jury's finding that he did not intend to distribute such substances in the forty-three instances specified in that indictment.

We therefore hold that Tran's second trial did not violate the Double Jeopardy Clause, and the district court did not err in denying his motion for judgment of acquittal, or in the alternative for new trial, on that basis.

## II.     Exclusion of Evidence of Racial Discrimination

Prior to Tran's second trial, the Government moved *in limine* to preclude evidence of a race-based motive for the investigation of Tran on the ground that such evidence was irrelevant under Rule 402 or that its probative value was outweighed by the danger of unfair prejudice under Rule 403 of the Federal Rules of Evidence. The district court granted the motion during the pre-trial conference, stating that this case "has absolutely nothing to do with race." Tran argues that this ruling was in error.

## A.     Standard of Review

As a threshold matter, the Government argues that Tran failed to preserve this argument for appeal by making an offer of proof or by seeking to offer the excluded evidence at trial, and that this court's review should therefore be for plain error only.

"[N]either the Rules nor this Circuit require a *formal* offer to preserve error." *United States v. Ballis*, 28 F.3d 1399, 1406 (5th Cir. 1994). Therefore, "the adequacy of a given informal proffer will necessarily depend on its particular circumstances." *Id.* Under the circumstances here, it was unnecessary for Tran to make a formal offer of proof. Federal Rule of Evidence

10

103(a)(2) provides that "[e]rror may not be predicated upon a ruling . . . exclud[ing] evidence unless . . . the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." Based on a review of the record, it is clear that the substance of the evidence was known to the court. During the pre-trial conference in which the court addressed the Government's motion, the Government declined to argue its motion, stating: "I think we have all discussed this in the previous trial, so I won't waste Your Honor's time." The court agreed, stating: "I have tried this case, in essence, once already." Because the court had already essentially received the offer of proof, in the form of the evidence Tran presented in the first trial, "a renewed objection or offer of proof at the time the evidence is to be offered [would have been] more a formalism than a necessity." Fed. R. Evid. 103 Advisory Committee's Note, 2000 Amendment. Accordingly, the issue was properly preserved for appeal and we review for abuse of discretion. *Accord Ballis*, 28 F.3d at 1406–07.

## B. Discussion

Federal Rule of Evidence 401 defines "relevant evidence" as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Although Tran admits that "the existence of racially virulent motives would not necessarily have disproved the Government's allegations," he argues that evidence of racial bias on the part of the DEA investigators would "have cast doubt on the credibility of the DEA's investigation" and would have it more likely that "the DEA's evidence regarding Tran's state of mind was slanted and unreliable."

In challenging the court's refusal to permit such evidence, Tran relies on case law relating to bias on the part of individual witnesses. However, Tran does not allege that the court prevented him from impeaching any Government

witness on the issue of bias; rather, he argues that he was targeted for prosecution because of his race. This is an allegation of selective prosecution, not of witness bias. Furthermore, Tran does not challenge the district court's additional finding that, even if the racial discrimination argument had some slight relevance in this matter, it was substantially outweighed by the danger of unfair prejudice and the danger of misleading the jury such that evidence thereof should be excluded pursuant to Federal Rule of Evidence 403. We therefore affirm the district court's judgment granting the Government's motion *in limine*.

### III. Refusal to Allow Tran to Recall a Government Witness

Finally, Tran argues that his conviction should be reversed because the district court improperly refused him permission to recall a Government witness in order to address matters outside the scope of that witness's direct examination. We review a district court's decision on recall of a witness for abuse of discretion. *See United States v. Masat*, 948 F.2d 923, 933 (5th Cir. 1991).

As part of its case in chief, the Government called Sean Baudier, a DEA investigator, to testify about the controlled substances seized from Tran's Pharmacy and about instructional materials regarding the Controlled Substances Act that the DEA provides to pharmacists. After Tran's counsel cross-examined Baudier on these matters, Baudier was dismissed. Tran's counsel later attempted to recall Baudier to question him about a tape recording in which DEA agents allegedly discussed how to "drag Tran into the investigation." After allowing Tran's counsel to conduct a proffer, the district court denied the request to recall Baudier.

Tran argues that, because his desired line of questioning lay outside the scope of the Government's inquiries on direct examination, he properly refrained from cross-examining Baudier on this matter during the Government's case-in-

No. 10-60600

chief and should have been permitted to recall Baudier as a defense witness. While Rule 611(b) of the Federal Rules of Evidence states that cross-examination "should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness," the Rule goes on to state that a court "may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." *See United States v. Wolford*, 614 F.2d 516, 519 (5th Cir. 1980) (concluding that district court's decision to allow cross-examination outside the scope of direct examination was not an abuse of discretion). Here, the trial court granted Tran a full opportunity to cross-examine Baudier and did not limit him to matters elicited by the Government on direct examination. Tran did not contradict this fact when confronted with it by the district court at trial, nor does he contest it on appeal.

Even if the district court somehow abused its discretion in refusing to permit Tran to recall Baudier, any error was harmless. *See United States v. James*, 510 F.2d 546, 551 (5th Cir. 1975). First, Baudier testified during the proffer that he had no specific recollection of the recording at issue. Second, Tran fails to address the district court's finding that Baudier's testimony would have been barred as hearsay, because Baudier himself did not participate in the tape-recorded discussion at issue. Finally, to the extent that Tran intended to inquire into the timing of the DEA investigation, as the trial transcript suggests, he did not explain why that information was relevant.

CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

13