

# IN THE
# TENTH COURT OF APPEALS

## No. 10-07-00124-CR

**KENNETH RICHARDS,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 278th District Court
Walker County, Texas
Trial Court No. 23483**

## MEMORANDUM OPINION

A jury found appellant, Kenneth Richards, guilty of the offense of possession of a cellular telephone while an inmate of a correctional facility. After finding true the allegation in the enhancement paragraph that Richards had prior felony convictions, the jury assessed his punishment at confinement for twenty-five years. In five issues, Richards contends that the trial court erred in admitting his statements into evidence and failing to instruct the jury on accomplice-witness testimony. He also challenges the effectiveness of his counsel's assistance at trial, the constitutionality of Penal Code

section 38.11(j), and whether his sentence constitutes cruel and unusual punishment. We will affirm.

## Background

On September 26, 2006, Richards was indicted for possession of a cell phone while in a correctional facility. Cathy Harvey, Richard's ex-wife testified that she periodically visited him at the Ellis Unit of the Texas Department of Criminal Justice (TDCJ) where he was confined. In November of 2005, Richards asked Harvey to obtain a cell phone for him. She bought one with pre-paid minutes and at his request placed it under a sign on a road located about ten miles from the prison. She visited him on November 27, 2005, and told him that she had done what he asked, and he later told her that he had received the phone.

Robert Hickman, who was also confined at Ellis Unit in 2005, testified that Richards offered him $100 to deliver packages of tobacco to another inmate. Hickman agreed to do so if he could use Richards's cell phone. Richards gave the cell phone to Hickman, but Richards was arrested for possessing tobacco before he could give the tobacco to Hickman for delivery. Hickman later used the cell phone and hid it after Richards was arrested.

John Riggle, an investigator with TDCJ, testified that he tried to interview Richards about the tobacco before his arrest. Instead, Richards asked to speak with Eddie Howell, a major at the Ellis Unit. Howell testified that Richards said that his wife dropped off a bag containing a cell phone and that Hickman hid it in the maintenance yard. Howell did not give Richards *Miranda* warnings or advise of him of his statutory

rights under Article 38.22, Section 2(a) of the Texas Code of Criminal Procedure before he spoke to him. Howell also failed to record the conversation. After speaking with Richards, Howell recovered the cell phone from Hickman.

Although Richards did not file a motion to suppress statements obtained in violation of *Miranda* and article 38.22 at trial, when the State offered the statements through the testimony of Riggle and Howell, Richards objected and a brief hearing was conducted outside the presence of the jury. The trial court overruled the objection and admitted the statements.

### Admission of Evidence

Richards contends in his first issue that the court erred by admitting into evidence the statements he gave to Howell. He argues that his statements were the result of an unwarned custodial interrogation, were not recorded, and were involuntary because Howell promised to restore Richard's status as a prison trustee in exchange for information. The State acknowledges that Richards did not receive *Miranda* warnings prior to making the challenged statements to Howell, but it argues that the evidence was correctly admitted by the trial court because the statements were not the product of "custodial interrogation."

We review a trial court's admission or exclusion of evidence for an abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). "A trial court abuses its discretion when its decision is so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Id.* The voluntariness of a statement given to law enforcement is determined from the totality of the circumstances. *Wyatt v.*

*State*, 23 S.W.3d 18, 23 (Tex. Crim. App. 2000); *Kearney v. State*, 181 S.W.3d 438, 444 (Tex. App.—Waco 2005, pet. ref'd).

The court conducted a hearing, outside of the presence of the jury, to determine whether the statements Richards made to Howell were admissible. Investigator Riggle testified that, after he summoned Richards from his cell, he introduced himself and told Richards that he was investigating an allegation that tobacco had been brought into the Ellis Unit. Richards then immediately said that he wanted to talk to Howell before talking to Riggle, and Richards was escorted out of his office.

Howell testified that Richards asked if he could meet with him. According to Howell, although he agreed to meet with Richards, he never requested an interview with him. After Richards was escorted to his office, Howell asked Richards "You wanted to talk to me. What is on your mind?" Richards then told Howell the details about his wife's purchasing the cell phone and his offering it to Hickman in exchange for delivery of the tobacco.

Richards testified that when he went to meet with Riggle, Riggle told him that he already had a statement from Richards's ex-wife and that if he did not cooperate, Riggle would see to it that he served every day of his ten-year sentence. According to Richards, it was then that he requested to speak with Howell. He specifically wanted to speak with Howell because in a prior incident where Richards was charged with possession of tobacco, Howell had made the case "go away" after he cooperated and gave information. He said that on the instant occasion Howell told him he needed to know what was going on in his unit. According to Richards, he asked Howell to help

him out like he did before, and Howell told him that he would have to give really good information first. As he began to discuss small details, Howell repeatedly told him that the information was not enough and that he needed to give additional information. Richards eventually told him everything. Richards also testified that Howell offered to help him keep his trustee status if Richards helped him find the cell phone.

According to Howell, he never promised Richards anything in exchange for his information. Howell testified as follows,

> **[Q]:** And during this conversation did you promise Kenneth Richards anything?
>
> **[A]:** No, I did not.
>
> **[Q]:** Did you tell him that anything bad would happen to him if he did not tell you the full story?
>
> **[A]:** No, I mean he was already found in possession of the tobacco by the farm manager. Disciplinary was already generated. I wasn't involved in that process at all. And he was going to be disciplined by agency rules for his misconduct for possession of the tobacco.
>
> **[Q]:** And during the conversation did you ever subject him to any type of coercion that would cause him to give you statements?
>
> **[A]:** It was probably his expectation that there would be leniency in the disciplinary punishment for his disciplinary offense for the possession of the tobacco. But I never promised him that. Because, you know, he basically was caught red handed, and that wasn't his first time to be found in possession of contraband.
>
> **[Q]:** And let me ask you specifically, if you didn't ask him—I will use legal phrases. Did you subject him to any express questioning other than what he told you?
>
> **[A]:** No. You know, he came into the office and I asked him, you know, Mr. Riggle said you wanted to talk to me and what is on your mind.
>
> **[Q]:** And did you do anything that would indicate that you were going to help him out?
>
> **[A]:** No.

**[Q]:** Anything that he might have taken from you as being okay, he has now told me, I'm going to get a benefit? I'm going to give it all up?

**[A]:** No, No. I didn't do any of that.

Article 38.22 generally precludes the use of a defendant's statements that result from custodial interrogation absent compliance with its procedural safeguards. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (Vernon 2005). But it does not preclude admission of statements that do not stem from custodial interrogation. *See id*. Thus, if Richards's statements did not stem from custodial interrogation, article 38.22 does not require their exclusion. *See Morris v. State,* 897 S.W.2d 528, 531 (Tex. App.—El Paso 1995, no pet.).

In this case, there is no dispute that Richards's unrecorded oral statements were made while he was in custody; the only disputed issue is whether there was an "interrogation." "Interrogation 'refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest or custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *Miffleton v. State*, 777 S.W.2d 76, 81-82 (Tex. Crim. App. 1989) (citing *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689-90, 64 L.Ed.2d 297 (1980)). When the officer's statements are designed to elicit incriminating statements from the defendant, it is interrogation. *Id.* at 82. Statements that the accused volunteers are admissible. *Miranda v. Arizona*, 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966); *Jefferson v. State*, 974 S.W.2d 887, 890 (Tex. App.—Austin 1998, no pet.).

Thus, not all custodial questioning can be classified as "interrogation." *Jones v. State*, 795 S.W.2d 171, 174 (Tex. Crim. App. 1990). Courts have held a variety of

questioning to be outside the constitutional definition of "interrogation." *Id.* In *Jones*, the Court of Criminal Appeals gave some examples where certain questioning by police officers has not constituted "interrogation":

> For example, routine inquiries, questions incident to booking, broad general questions such as "what happened," and questions mandated by public safety concerns e.g. "where did you hide the weapon" when the weapon has just been hidden in the immediate vicinity. *See generally* Ringel, *Searches And Seizures, Arrests And Confessions*, § 27.4 (Clark Boardman Company, Ltd. 1987). In Texas…courts have held several police questions to be non-interrogative. *Massie v. State*, 744 S.W.2d 314 (Tex. App.—Dallas 1988, pet. ref'd.) ("Where are you going?" to a DWI suspect stopped on the street); *DeLeon v. State*, 758 S.W.2d 621 (Tex. App.—Houston [14th Dist.] 1988, no pet.) (asking a suspect where the murder weapon was). *But see Sims v. State*, 735 S.W.2d 913 (Tex. App.—Dallas 1987, pet. ref'd.) (holding that questions regarding when a defendant last ate, and asking what day, date and time it was did amount to interrogation).

*Id.* at 174 n.3.

Howell testified that after officers found a large quantity of tobacco at the Ellis Unit, he contacted Riggle's office so that they could investigate. He knew that Riggle was interviewing Richards on questions of tobacco possession, but he did not know any other details surrounding the case. Both Howell and Riggle testified that Richards asked to meet with Howell after he was brought in to speak with Riggle. According to Howell, when Richards arrived to meet with him, Howell asked him "what's on your mind?" Richards then began to explain how his wife had delivered tobacco and a cell phone.

We conclude that the trial court was justified in finding that Richards's oral statements were not the product of custodial interrogation, but were spontaneous and

voluntary and thus admissible under section 5 of article 38.22. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 5; *Dossett v. State*, 216 S.W.3d 7, 24 (Tex. App.—San Antonio 2006, pet. ref'd). Even though Richards was in custody, the evidence at trial showed that he made voluntary statements after asking to meet with Howell.

Richards's testimony conflicted with Howell's when Richards claimed that Howell asked to meet with him (and not vice versa); however, the trial court was entitled to believe the officer's version of the facts and disbelieve Richards. There was ample evidence from both officers that Richards initiated the discussion and was eager to talk about the cell phone and the tobacco. *Dossett*, 216 S.W.3d at 24. Many cases have held that such spontaneous, volunteered statements not made in response to interrogation are admissible, whether or not the defendant is in custody. *See, e.g.*, *Wiley v. State*, 699 S.W.2d 637, 638-39 (Tex. App.—San Antonio 1985, pet. ref'd, untimely filed) (holding that defendant's statement, "Okay, I did it," made after being shown bloody clothes and bloody knife, was not in response to interrogation and was admissible); *Smith v. State*, 949 S.W.2d 333, 339 (Tex. App.—Tyler 1996, pet. ref'd) (holding captured defendant's unsolicited statement that it would not take him as long to escape from prison the next time was admissible); *Higgins v. State*, 924 S.W.2d 739, 743-45 (Tex. App.—Texarkana 1996, pet. ref'd) (holding defendant's spontaneous statement that he killed his wife made while in custody and in the back seat of police car was not the product of police questioning and was voluntary and admissible); *De Leon v. State*, 758 S.W.2d 621, 625 (Tex. App.—Houston [14th Dist.] 1988, no pet.) (defendant was handcuffed and questioned about a prison stabbing due to a blood stain on his knee; his

statement in response to police questioning about the location of the knives was suppressed, but his later, spontaneous statement, "I killed him," was held voluntary and admissible); *Villarreal v. State*, No. 04-05-00287-CR, 2005 Tex. App. Lexis 9300, at *4-5 (Tex. App.—San Antonio Nov. 9, 2005, pet. ref'd) (not designated for publication) (holding defendant was in custody, but was not being interrogated at the time of his spontaneous admission while officer was escorting him to an interview room that he killed his mother).

Howell's question to Richards, "what's on your mind?" was non-interrogative and more akin to a greeting than a question reasonably calculated to elicit Richards's response. *Massie*, 744 S.W.2d at 316-17. Thus, we cannot say that the trial court abused its discretion in admitting Richards's statement because it was spontaneous and voluntary and not the result of interrogative questioning. *Dossett*, 216 S.W.3d at 24. We overrule Richards's first issue.

### Accomplice-Witness Instruction

In his second issue, Richards contends that Harvey is an accomplice and the court erred by failing to include an accomplice-witness instruction in the jury charge. Richards did not request this instruction at trial or object to its omission from the jury charge.

A person indicted for the same crime as the defendant, or a lesser-included offense based on "alleged participation" in the "greater offense" is an accomplice as a matter of law. *Ex parte Zepeda*, 819 S.W.2d 874, 876 (Tex. Crim. App. 1991). A person who "participates with the defendant before, during, or after commission of a crime"

and may be prosecuted for the same crime as the defendant is an accomplice as a matter of fact. *Id* at 875-76. To be an accomplice, one must perform an affirmative act promoting the crime. *See Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004). This participation must involve some affirmative act that promoted the commission of the offense with which the accused is charged. *Bulington v. State*, 179 S.W.3d 223, 229 (Tex. App.—Texarkana 2005, no pet.). If a person is an accomplice as a matter of law, the court must so instruct the jury. *See Paredes*, 129 S.W.3d at 536. If the evidence is conflicting as to whether a person is an accomplice, the court must submit the issue to the jury. *See id*.[1]

Assuming, without deciding, that Richards was entitled to an accomplice-witness instruction, we will reverse only if the unobjected-to error caused "egregious" harm.[2] *See Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002). Omission of an accomplice-witness instruction is harmless unless "corroborating (non-accomplice) evidence is 'so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive.'" *Id.*

A defendant cannot be convicted based on accomplice testimony unless it is corroborated. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005); *see also Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim App. 1999). Corroboration is *insufficient* if it

---

[1]     If a person is *not* an accomplice, "no charge need be given to the jury either that the witness is an accomplice witness as a matter of law or in the form of a fact issue whether the witness is an accomplice witness." *Gamez v. State*, 737 S.W.2d 315, 322 (Tex. Crim. App. 1987).

[2]     Because Richards failed to object to the court's omission, he must prove that the error caused him egregious harm.

"merely shows the commission of the offense," but is *sufficient* if it tends to connect the defendant to the offense. TEX. CODE CRIM. PROC. ANN. art. 38.14.[3] Corroborative evidence may be "circumstantial or direct." *Reed v. State*, 744 S.W.2d 112, 126 (Tex. Crim. App. 1988).

The record contains sufficient corroborative non-accomplice testimony tending to connect Richards to possession of the cell phone. Howell testified that Richards told him that he asked Harvey to purchase the cell phone and deliver it to him. Richards also told him that he had given the cell phone to Hickman. Howell then spoke to Hickman, who later admitted that he had the cell phone and told Howell where it was hidden. Riggle testified that after he was given the cell phone, he recovered six numbers, three of them associated with Hickman and one made to Lake Country Inn, the location Harvey testified she called to test the cell phone.

This non-accomplice testimony establishes that Richards: (1) was in possession of the cell phone; (2) was housed in the correctional facility at the time he came into possession of the cell phone; and (3) gave the cell phone to Hickman so that he could use it. Collectively, these factors constitute sufficient corroboration and tend to connect Richards to the possession; thus, the jury could reasonably conclude from non-accomplice testimony that Richards possessed the cell phone. *See Hernandez v. State*, 939 S.W.2d 173, 178 (Tex. Crim. App. 1997).

---

[3] It is not necessary that corroborative evidence establish the defendant's guilt or "directly connect the defendant to the crime." *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim App. 1999).

Therefore, we do not find the evidence so weak or unconvincing as to make the State's case clearly and significantly less persuasive. *See Herron*, 86 S.W.3d at 632. Because Richards did not suffer egregious harm, the charge error is harmless. We overrule Richards's second issue.

**Effective Assistance of Counsel**

In his third issue, Richards argues that trial counsel provided ineffective assistance by (1) failing to request an accomplice-witness instruction; (2) repeatedly mentioning that he invoked his right to remain silent when talking to officers; and (3) failing to object to Riggle's testimony that he believed Harvey was telling the truth.

The standard in *Strickland v. Washington* applies to a claim of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail, a defendant must first show that his counsel's performance was deficient. *Id.* at 687, 104 S.Ct. at 2064; *see Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). Then it must be shown that this deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000).

In assessing Richards's claims, we apply a strong presumption that trial counsel was competent. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We presume counsel's actions and decisions were reasonably professional and were

motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). When, as in this case, there is no evidentiary record developed at a hearing on a motion for new trial, it is extremely difficult to show that trial counsel's performance was deficient. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

*Accomplice Witness*

First, Richards argues that his counsel was ineffective for failing to request an instruction to the jury that Harvey was an accomplice witness. Because of the nature of the evidence corroborating Harvey's testimony discussed in Richards's second issue, we cannot say that but for his trial counsel's failure to request this instruction, the outcome of the proceeding would have been different. Consequently, Richards has failed to meet the second prong of *Strickland*. *See Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

*Richards's Right to Remain Silent*

Second, Richards contends that counsel's questions on cross-examination that elicited testimony that he refused to talk to Riggle after being advised of his constitutional rights constituted deficient performance. *Hall v. State*, 161 S.W.3d 142, 154-55 (Tex. App.—Texarkana 2005, pet. ref'd) (counsel ineffective in failing to object to prosecutor's statements and argument regarding defendant's post-arrest silence); *Brown v. State*, 974 S.W.2d 289, 294 (Tex. App.—San Antonio 1998, pet. ref'd) (counsel ineffective in failing to object to testimony regarding defendant's post-arrest silence).

We evaluate counsel's performance while taking into consideration the totality of representation and the particular circumstances of this case. *Thompson*, 9 S.W.3d at 813;

*Ex parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991). There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Tong*, 25 S.W.3d at 712. Therefore, we will not use hindsight to second guess counsel's trial strategy. *Hall*, 161 S.W.3d at 152.

Richards argues that the jury should not have been told that he invoked his right to remain silent, and the State agrees. However, under the facts of this case, proof that Richards invoked his rights once they were read to him could have supported Richards's contention that the confession he made to Howell was involuntary and inadmissible. Because "there is at least the possibility that the conduct could have been [a] legitimate trial strategy, we must deny relief on an ineffective assistance claim on direct appeal" for this argument. *Murphy v. State*, 112 S.W.3d 592, 601 (Tex. Crim. App. 2003).

*Truthfulness*

Counsel elicited on cross-examination of Riggle that he believed that Harvey was truthful when he interviewed her. This, argues Richards, was inadmissible opinion testimony and counsel's failure to object fell below the standard of reasonable professional representation. *Schutz v. State*, 957 S.W.2d 52 (Tex. Crim. App. 1997) (expert testimony that complainant is telling the truth is inadmissible); *Miller v. State*, 757 S.W.2d 880, 883 (Tex. App.—Dallas 1988, pet. ref'd).

Counsel's questioning of Riggle was as follows.

**[Richards's Counsel]:** Not in two hours, her being truthful, her coming forward, answering every question you asked, and in two hours not once did you ever hear her put that phone in the hands of my client Richards
**[A]:** No.

Although it may have been unwise for Richards's counsel to elicit inadmissible testimony on truthfulness, analyzing this claim we cannot say that counsel's actions were not grounded in sound trial strategy. *Walker v. State*, 201 S.W.3d 841, 850 (Tex. App.—Waco 2006, pet. ref'd). Therefore, Richards has failed to meet the first prong of *Strickland* on this argument. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Walker*, 201 S.W.3d at 850. We overrule Richards's third issue.

### Constitutionality of Section 38.11(j)

Richards's fourth issue complains that section 38.11(j) of the Penal Code violates the Equal Protection Clause of the Fourteenth Amendment. The language of section 38.11(j) is as follows: a person commits an offense if the person while an inmate of a correctional facility operated by or under contract with the Texas Department of Criminal Justice or while in the custody of a secure correctional facility or secure detention facility for juveniles possesses a cellular telephone. TEX. PEN. CODE ANN. § 38.11(j) (Vernon 2008).

When reviewing the constitutionality of a statute, we presume that the statute is valid and that the legislature did not act unreasonably or arbitrarily in enacting it. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002); *see also* TEX. GOV'T CODE ANN. § 311.021 (Vernon 1998). The burden is on Richards to prove the statute is unconstitutional. *See Rodriguez*, 93 S.W.3d at 69. The statute must be upheld if it can be

reasonably construed as constitutional. *Brenneman v. State*, 45 S.W.3d 729, 732 (Tex. App.—Corpus Christi 2001, no pet.).

Inmates are not a suspect class and so their equal protection claims must be reviewed under a rational-basis test. *Garcia v. Dretke*, 388 F.3d 496, 499 (5th Cir. 2004). So long as the statute furthers some legitimate state interest, its constitutionality should be upheld. *Id.* Howell told the jury that he was immediately worried when he heard there was a cell phone on the unit because of security concerns. He testified that "we can't fulfill our mission to provide safety if offenders are running around with cell phones." Similarly, Riggle testified that the cell phone case was a top priority because the prison is always concerned about escape plans made using cell phones. Maintaining security in prisons is arguably a legitimate state interest and therefore we find no merit in Richards's claim of an Equal Protection Clause violation. We overrule his fourth issue.

### Cruel and Unusual Punishment

Richards's final issue addresses whether his sentence amounts to cruel and unusual punishment.[4] When the trial court sentenced Richards to twenty-five years in prison, he did not object on grounds of cruel and unusual punishment. *See Steadman v. State*, 160 S.W.3d 582, 586 (Tex. App.—Waco 2005, pet. ref'd) (claim that sentence constituted cruel and unusual punishment not preserved absent an objection at trial). Because this issue is not preserved, we overrule it.

---

[4] Because Richards had four prior felony convictions, his sentence of twenty-five years was the minimum prescribed for his status and violation.

## Conclusion

Having overruled all of Richards's issues, we affirm the trial court's judgment.

BILL VANCE
Justice

Before Chief Justice Gray,
     Justice Vance, and
     Justice Reyna
     (Chief Justice Gray concurs in the judgment with a note)*
Affirmed
Opinion delivered and filed December 31, 2008
Do not publish
[CRPM]

*(Chief Justice Gray concurs in the Court's judgment to the extent it affirms the trial court's judgment. A separate opinion will not issue. He notes, however, that it is not undisputed, as stated by the Court, that Richards was in custody. The question of what constitutes custody for purposes of custodial interrogation is not so clear cut when the person is already in prison. In this instance the question of custody is not necessary to resolve because the Court determines there was no interrogation. For this reason the conclusory statements that Richards was in custody are irrelevant to the disposition of this appeal. As such they are dicta and should be removed from the opinion.)