UNITED STATES of America,
Plaintiff-Appellee,

v.

Charles D. GRIGGS,
Defendant-Appellant.

No. 80–5588.

United States Court of Appeals,
Fifth Circuit.
Unit B

July 24, 1981.

---

Archibald J. Thomas, III, Asst. Federal Public Defender, Jacksonville, Fla., for defendant-appellant.

Thomas E. Morris, Asst. U. S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before GEWIN *, RONEY and HATCH-
ETT, Circuit Judges.

HATCHETT, Circuit Judge:

Charles D. Griggs appeals an order denying his motion to dismiss an indictment against him alleging conspiracy and counterfeit violations on the ground of collateral estoppel.[1] Griggs contends that the factual issues involved in the present indictment were conclusively established in his favor in a previous trial for passing and uttering counterfeit currency. We reverse the order of the district court as to Count V of the present indictment and remand for further proceedings.

## FACTS

On May 31, 1979, a grand jury issued an indictment (first indictment) charging Griggs with three counts of passing and uttering counterfeit money in violation of 18 U.S.C. § 472.[2] Count I of the indictment alleged that on April 20, 1979, Griggs, with the intent to defraud, passed and uttered to employees of Twelve North Restaurant, Jacksonville, Florida, five forged and counterfeited federal reserve notes in fifty dollar denominations. Count II of the indictment charged that on April 20, 1979, Griggs, with the intent to defraud, passed and uttered to an employee of Page One Lounge, Jacksonville, Florida, one forged and counterfeited federal reserve note in the denomination of fifty dollars. Count III of the indictment charged that on April 20, 1979, Griggs, with the intent to defraud, passed and uttered to another employee of Page One Lounge, Jacksonville, Florida, one forged and counterfeited federal reserve note in the denomination of fifty dollars. Griggs entered a not guilty plea to each of the three counts. A jury trial ensued.

At trial, the government introduced evidence as to Count I which showed that on the evening of April 20, Griggs, Frederick Kirschwing, and Howard Kinsey visited the Twelve North Restaurant in Jacksonville to have dinner. Upon entering the restaurant, the men went to the bar and ordered drinks. To pay for the drinks, Griggs gave the bartender a fifty dollar bill. When the bartender returned with the change, Griggs took a five dollar bill from the tip tray and put it on the counter as a gratuity for her services. The three men were thereafter seated for dinner. The dinner bill was $103. The waiter testified that Griggs gave him three fifty dollar bills in payment for the dinner and gave him another fifty dollar bill to be changed.

To prove Count II, the government introduced evidence which showed that Griggs, Kirschwing, and Kinsey went to the Page One Lounge after leaving the Twelve North Restaurant. Susan Monson, an employee of the Page One Lounge, testified that a man gave her a fifty dollar bill, later determined to be counterfeit, as payment for three cover charges. The district court, 498 F.Supp. 277, did not allow her to identify Griggs in the courtroom, but did allow her to testify that she had identified a photograph of Griggs a few days after the alleged event.

---

* This case is being decided by a quorum due to the death of Judge Gewin on May 15, 1981. 28 U.S.C. 46(d).

1. As recognized by a panel of this court in *United States v. Leach*, 632 F.2d 1337, 1338 n. 1 (5th Cir. 1980):

    Jurisdiction for this case comes under 28 U.S.C. § 1291, which permits "appeals from all final decisions of district courts ...." While the denial of a motion to dismiss an indictment may not appear to be a final order, "a pretrial order denying a motion to dismiss an indictment on double-jeopardy grounds ... falls within the 'small class of cases' that *Cohen* [*v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93

L.Ed. 1528 (1949)] has placed beyond the confines of final-judgment rule." *Abney v. United States*, 431 U.S. 651, 659, 97 S.Ct. 2034, 2040, 52 L.Ed.2d 651 (1977) (footnote omitted).

2. 18 U.S.C. § 472 provides:

    Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.

With regard to Count III, the government relied on the testimony of Barbara Rhodes, a bartender at the Page One Lounge. Rhodes testified that one of three men paid for drinks with a counterfeit fifty dollar bill. She also testified that after payment for the drinks, Griggs asked her to change a fifty dollar bill. Noting that the bill was torn, Rhodes testified that she sent the bill to the manager for approval. The manager realized that the bill was counterfeit and would not approve it. Rhodes testified that she returned the bill to Griggs, and he left the bar.

Griggs testified on his own behalf. The defense proceeded on the theory that Griggs was unaware of the fact that the bills were counterfeit. In support of this theory, Griggs testified that he acquired the fifty dollar bills at the White Lion's Tavern in Saint Augustine, Florida, where he participated in a "liar's poker game" with Kirschwing. He further testified that after drinking a considerable amount of alcoholic beverages and playing "liar's poker," he and Kirschwing decided to travel to Jacksonville to have dinner. Although he did not recall paying for the drinks that the three men had at the bar, he remembered that Kirschwing supplied the fifty dollar bills which he gave to the waiter to pay the check. He admitted that he supplied the fifty dollar bill which was passed to the waiter in order to obtain change.

With regard to his activities at the Page One Lounge, Griggs testified that he did not pay the cover charge, and that he never paid cover charges, opting instead not to frequent bars assessing cover charges.

With regard to Count III, Griggs did not recall paying for the drinks at Page One Lounge, but admitted he asked the bartender to change his fifty dollar bill.

At the close of all the evidence, the trial court granted Griggs's motion for directed verdict on Count III. The jury thereafter found Griggs not guilty on Counts I and II.

Subsequently, the grand jury issued a second indictment against Griggs. Count I of the five-count indictment alleged that between April 1, 1979, and August 17, 1979, Griggs conspired with other persons to publish, pass, sell, and deliver counterfeit fifty dollar federal reserve notes in violation of Title 18 U.S.C. §§ 472 and 473.[3] Count I of the second indictment alleged thirteen overt acts performed by Griggs in furtherance of the conspiracy. Counts II and III of the second indictment alleged that on April 6 and 17, 1979, Griggs sold, transferred, and delivered to Kirschwing twenty counterfeit fifty dollar federal reserve notes in violation of 18 U.S.C. § 472. Count IV alleged that on April 6, 1979, Griggs possessed an unknown quantity of counterfeit federal reserve notes in twenty, fifty, and one hundred dollar denominations in violation of 18 U.S.C. § 472. Count V alleged that on April 20, 1979, Griggs attempted to pass and utter to Barbara Rhodes at the Page One Lounge, Jacksonville, Florida, one counterfeit fifty dollar federal reserve note, knowing it to be counterfeit, with intent to defraud in violation of 18 U.S.C. § 472.

Griggs moved the district court to dismiss the indictment on the ground that the government was collaterally estopped from relitigating the essential facts of the present case, since those facts had been previously determined in his favor by virtue of his acquittal of counterfeiting charges in the prior criminal action. The district court, finding the doctrine of collateral estoppel "wholly inapposite," denied Griggs's motion.

## ISSUE

The issue raised on this appeal is whether the principles of collateral estoppel bar the trial of the facts necessary to prove the crimes charged in the second indictment.

---

3. 18 U.S.C. § 473 provides:

Whoever buys, sells, exchanges, transfers, receives, or delivers any false, forged, counterfeited, or altered obligation or other security of the United States, with the intent that the same be passed, published, or used as true and genuine, shall be fined not more than $5,000 or imprisoned not more than ten years, or both.

## DISCUSSION

In *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the Supreme Court held that the doctrine of collateral estoppel is embodied in the fifth amendment guarantee against double jeopardy. The Court interpreted collateral estoppel in that case to mean that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated by the same parties in any future lawsuit." *Ashe* at 443, 90 S.Ct. at 1194. This circuit has construed *Ashe* to mandate two inquiries: "First, what facts were necessarily determined in the first lawsuit? . . . Second, has the government in a subsequent trial tried to relitigate facts necessarily established against it in the first trial?" *United States v. Mock*, 604 F.2d 341, 343 (5th Cir. 1979). "Facts so established in the first trial may not be used in the second trial either as ultimate or as evidentiary facts." *Mock* at 343.

In assessing the applicability of collateral estoppel, *Ashe* teaches that we must "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matters." *Ashe* at 444, 90 S.Ct. at 1194. "The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.'" *Ashe* at 444, 90 S.Ct. at 1194 (quoting *Sealfon v. United States*, 332 U.S. 575, 579, 68 S.Ct. 237, 239, 92 L.Ed. 180 (1947)).

We turn now to the inquiries mandated by *United States v. Mock, supra*, to determine which facts were established in the first trial. As to Count I of the initial indictment, Griggs admitted passing four counterfeit fifty dollar bills to the waiter. In addition, the bartender's testimony that Griggs gave her a fifty dollar bill as payment for the drinks was sufficiently specific to identify Griggs as the person passing the fifty dollar bill. The jury, in acquitting Griggs on this charge, must necessarily have found that Griggs lacked knowledge that the fifty dollar bills were counterfeit, and therefore, he lacked the necessary intent to defraud.

As to Count II of the first indictment, Susan Monson, an employee of the Page One Lounge, testified that one of the three men gave her a fifty dollar bill, later determined to be counterfeit, as payment for the cover charge. Although her testimony regarding Griggs's identity was weak, she did testify that she identified a photograph of Griggs as the man who gave her the fifty dollar bill a few days after the incident. She also testified that the man who paid the cover charge put the change in his front, left trouser pocket. Griggs testified that he always put his money in his front, left trouser pocket. He did, however, deny that he ever paid cover charges. The jury acquitted Griggs of Count II. The jury must have based its verdict on a finding that the testimony did not establish that Griggs actually passed the bill to Monson, or that he did not know the fifty dollar bill was counterfeit.

With regard to Count III, the district court directed a verdict for Griggs because the government's evidence failed to establish that Griggs passed the counterfeit fifty dollar bill to Barbara Rhodes.

In sum, the facts established at the first trial were: (1) as to Count I, Griggs had no knowledge that the counterfeit bills which he passed at Twelve North Restaurant were counterfeit; (2) as to Count II, either Griggs lacked knowledge that the fifty dollar bill was counterfeit or the evidence failed to establish Griggs passed the fifty dollar bill; and (3) as to Count III, the evidence failed to establish that Griggs passed the fifty dollar bill to Barbara Rhodes.

## I.

The crimes alleged in Counts I through IV are not barred by the doctrine of collateral estoppel. We agree with the district court that "[t]hese counts allege crimes which are distinctly different in nature from the passing and uttering charges of which the defendant was acquitted." They are alleged "to have occurred on different dates and at different times than those charged in the previous indictment."

As a result, the crimes alleged in the second indictment are so removed in both type and time from those alleged in the first indictment as to distinguish the issues of knowledge and identity in the first trial from the issues of knowledge and identity in a second trial. *Cf. Douthit v. Estelle*, 540 F.2d 800 (5th Cir. 1970) (state was not collaterally estopped from trying defendant for assault with intent to commit rape on one occasion after his acquittal in jury trial for raping same woman on another occasion, where series of rapes were separated by considerable time, distance, and circumstances.) As stated by the district court, "it is entirely possible that the defendant had the requisite knowledge on one occasion and not on another . . . ."

## II.

Count V of the second indictment remains for our consideration. Count V of the second indictment charges an attempted pass to Barbara Rhodes, an employee of Page One Lounge. This count arises out of the same set of events alleged in the first indictment and is substantially similar to Count III except that Count III alleges a completed pass and involves a different bill.

The district court, in refusing to apply collateral estoppel, found that the incidents charged in both indictments constituted separate transactions and involved different crimes and different bills. This is true even though the incidents occurred at the same place, involved the same employee, and occurred at approximately the same time. The district court further found that it did not consider "the identity nor the intention of the man who attempted to pass the second fifty dollar bill . . . in granting the directed verdict as to Count III." Since no issue (knowledge) necessary for the prosecution's case in the second trial "has necessarily been found for the defendant in the first trial," the court concluded that collateral estoppel was not applicable.

We agree that the attempted pass charged in Count V is different from the completed pass charged in Count III and involves a different bill. We disagree that the doctrine of collateral estoppel does not operate to bar prosecution of Griggs under Count V. Although the district court did not consider the issue of knowledge in granting the directed verdict on Count III, the record indicates that the jury acquitted Griggs of the crime charged in Count I because he lacked knowledge that the fifty dollar bills were counterfeit. Griggs admitted that he passed the counterfeit bills identified in Count I of the first indictment. There was also testimony that even though Griggs had consumed a considerable amount of alcoholic beverage, he was coherent and did not appear to be drunk. In our view, the events which transpired on the evening of April 20 are so intimately related that if the defendant lacked knowledge that the bills were counterfeit in the Twelve North Restaurant, he also lacked knowledge that a fifty dollar bill in his possession which he attempted to pass in the Page One Lounge was counterfeit. Little time elapsed between Griggs's departure from Twelve North Restaurant and his arrival at Page One Lounge.[4] Moreover, the record is devoid of any evidence that would indicate that Griggs acquired knowledge that the bills were counterfeit between leaving the Twelve North Restaurant and arriving at the Page One Lounge.

Our decision accords with *Ashe* which counsels against a "hypertechnical and archaic approach" to the application of collateral estoppel. *Ashe*, 397 U.S. at 444, 90 S.Ct. at 1194. This approach represents a realistic and rational interpretation of the facts necessarily found against the government in the first trial and which may not be relitigated in a second trial to prove the

---

**4.** The government admits that "the cases in which the court has found subsequent prosecution to be collaterally estopped, have been cases in which the subsequent charge dealt with the same date and time as the original charge." *E. g., Ashe v. Swenson*, 397 U.S. 436,

90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *United States v. Leach*, 632 F.2d 1337 (5th Cir. 1980); *Johnson v. Estelle*, 506 F.2d 347 (5th Cir.), *cert. denied*, 422 U.S. 1024, 95 S.Ct. 2619, 45 L.Ed.2d 682 (1975).

elements of Count V of the second indictment.

## CONCLUSION

For the foregoing reasons, we hold that the doctrine of collateral estoppel does not apply to bar litigation of the facts necessary to prove the elements of the crimes charged in Counts I, II, III, and IV of the present indictment. In contrast, we hold that collateral estoppel applies to bar relitigation of the facts necessary to prove the elements of the crime charged in Count V of the present indictment. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.