**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Darrell G. BROWN, Defendant–
Appellant.**

**No. 91–6056.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 8, 1993.

Joel S. Perwin, Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, FL, Bruce Rogow, Beverly Pohl, Ft. Lauderdale, FL, for defendant-appellant.

Peter Prieto, Harriett R. Galvin, Linda Collins Hertz, Asst. U.S. Attys., Miami, FL, for plaintiff-appellee.

Before HATCHETT, DUBINA, and CARNES, Circuit Judges.

CARNES, Circuit Judge:

The sole issue presented in this case is whether Appellant Darrell Brown's 1991 conviction for bank fraud, mail fraud, and conspiracy is barred by the doctrine of collateral estoppel as a result of Brown's 1989 acquittal of bank fraud and conspiracy charges. The charges in the two trials arose from the sale of various units at a particular condominium development pursuant to what Brown referred to as "creative financing plans" but which the Government less charitably characterized as fraudulent financing schemes.

The doctrine of collateral estoppel is a narrow exception to the Government's right to prosecute a defendant in separate trials for related conduct. It bars a subsequent prosecution only where a fact or issue necessarily determined in the defendant's favor in the former trial is an essential element of conviction at the second trial. *United States v. Bennett*, 836 F.2d 1314, 1316 (11th Cir.), *cert. denied*, 487 U.S. 1205, 108 S.Ct. 2847, 101 L.Ed.2d 884 (1988); *United States v. DeMarco*, 791 F.2d 833, 836 (11th Cir.1986). Application of the doctrine of collateral estoppel is a two-step process. First, a court must decide whether it can ascertain the basis of the acquittal at the first trial. More precisely, a court must determine whether the jury's verdict of acquittal was based upon reasonable doubt about a single element of the crime which the court can identify. If so, the court must then decide whether that element is also an essential element of the crime for which the defendant was convicted in the second trial. The burden of persuasion is on the defendant, not the Government, as to both inquiries. *United States v. Boldin*, 818 F.2d 771, 775 (11th Cir.1987).

Brown contends that he has carried his burden as to both prongs of the collateral estoppel inquiry. He is half right. Unfortunately for Brown, he is also half wrong.

We begin with a discussion of the first prong of the analysis, deciding whether we can identify the basis for the acquittal at the first trial. In making the inquiry, we are required to examine the entire record of that proceeding and to take into account the pleadings, evidence, charges, and other relevant matters, such as closing arguments and jury instructions. *Ashe v. Swenson*, 397 U.S. 436, 443–44, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). We also deem it essential in this inquiry to apply the well-recognized presumption that a jury follows its instructions. *E.g., Parker v. Randolph*, 442 U.S. 62, 73, 99 S.Ct. 2132, 2139, 60 L.Ed.2d 713 (1979) ("A crucial assumption underlying that system [of trial by jury] is that juries will follow the in-

structions given them by the trial judge. Were this not so, it would be pointless for a trial court to instruct a jury."); *id.* at 75 n. 7, 99 S.Ct. at 2141 n. 7 ("The 'rule'—indeed, the premise upon which the system of jury trials functions under the American judicial system—is that juries can be trusted to follow the trial court's instructions."); *Raulerson v. Wainwright*, 753 F.2d 869, 876 (11th Cir.1985) ("Jurors are presumed to follow the law as they are instructed.").

■ While the possibility of jury nullification may influence the strategy of trial lawyers, it cannot enter into the analysis of courts making collateral estoppel inquiries. The presumption that juries follow their instructions is necessary to any meaningful search for the reason behind a jury verdict. We are guided by that presumption in carrying out our task, which is to make "a practical and realistic assessment of what makes the jury verdict coherent." *United States v. Bennett*, 836 F.2d at 1316; *see also United States v. Whitaker*, 702 F.2d 901 (11th Cir.1983).

■ At the first trial, Brown admitted that he had signed documents containing certain material misrepresentations and that those documents were submitted to a federally insured lending institution. Brown never denied any of that. Instead, he pursued a *mens rea* defense, claiming that he had not acted with willfulness. The court instructed the jury not to convict unless it found beyond a reasonable doubt that Brown had acted willfully in making the misrepresentations to the lending institution. The court defined willfulness as follows:

> The word willfully, as that term has been used from time to time in these instructions, means the act was committed voluntarily, purposefully, with the specific intent to do something the law forbids, that is with bad purpose either to disobey or disregard the law.

Brown presented testimony that he had acted with advice of counsel, and he presented witnesses who testified to his good character. The court instructed the jury that all of that evidence went to the issue of whether the Government had proven Brown had acted with willfulness. There was also evidence from which the jury could have found that Brown had made little or no attempt to conceal his actions and had told a large number of individuals and firms (albeit not the victim lending institution) about his scheme. That evidence, too, went to the willfulness element.

The Government argues that the jury might have acquitted Brown in the first trial because he had no contact with the actual purchasers of the two units involved in that case. That argument fails because Brown was charged with fraud against the lending institution, not the purchasers, and there was nothing in the jury instructions that would have required the jury to find contact between Brown and the purchasers before convicting him. The Government argues that the jury may have acquitted Brown because the jury may have imputed the closing attorney's knowledge of the actual facts to the financial institution. Again, that argument is blocked by the jury instructions. The court charged the jury that even actual knowledge by the lending institution was no defense.

The Government also argues that acquittal of Brown's codefendant in the first trial, John Reventas, indicates that Brown may have been acquitted on some basis other than advice of counsel, because Reventas had no advice of counsel defense. That argument is not persuasive in view of the record. Advice of counsel is but one way in which Brown sought to negate the willfulness element. He also presented evidence of good character, as did Reventas, who was a minister. That the jury acquitted Reventas on some basis other than advice of counsel does not mean that Brown's acquittal was not based on an absence of willfulness. Nor does it even mean that the jury did not base Brown's acquittal on his advice of counsel defense, which was one of three types of evidence Brown relied upon to negate the willfulness element. Codefendants can be acquitted for different reasons, and Reventas' acquittal does nothing to undermine our conclusion that Brown was acquitted because of the willfulness element.

No other evidence Brown presented or argument he made at the first trial went to any element of the offense other than willfulness. Lack of willfulness was Brown's only defense just as lack of identity was the only defense in the first trial involved in *Ashe v. Swenson*. We are required to presume that the verdict of acquittal at the first trial had a rational basis consistent with the jury instructions, and the only rational basis it could have had is a reasonable doubt about whether Brown had acted willfully.

Having identified a single rational basis upon which the jury verdict at the first trial necessarily rested, we now turn to the second part of the collateral estoppel inquiry. We are required to determine whether Brown has carried his burden of establishing that the jury's finding against the Government on the willfulness issue at the first trial is inconsistent with the conviction at the second trial. *United States v. Bennett*, 836 F.2d at 1316; *United States v. Hewitt*, 663 F.2d 1381, 1386–87 (11th Cir. 1981). The underlying fraud crime for which Brown was convicted in the second trial had the same legal elements, including willfulness, as the fraud crime for which he was acquitted at the first trial. The definition of willfulness the judge gave in jury instructions at the second trial was verbatim that in the first trial.

Brown's problem is that the identity of overlapping elements required for collateral estoppel must extend beyond the legal definition of the elements. There must also be a factual identity of issues to such an extent that a jury rationally could not have a reasonable doubt about Brown's willfulness in the scheme involved in the first trial without also having a reasonable doubt about his willfulness in the scheme involved in the second trial. The subsequent verdict of conviction must be rationally inconsistent with the prior verdict of acquittal. *United States v. Bennett*, 836 F.2d at 1316 ("To bar prosecution, a finding of fact must be inconsistent with a finding of guilt in a second trial."). In *Ashe v. Swenson*, the Government was estopped from prosecuting the defendant for robbery again, but it was not merely because identity was the only element at issue in both cases. Instead, collateral estoppel applied in *Ashe v. Swenson* because the six hapless poker players were robbed by the same robbers at the same time, and there was no rational way to reconcile the second jury's finding that there was no reasonable doubt Ashe was one of the robbers with the first jury's finding that there was a reasonable doubt whether he was.

The decision which lends the most support to Brown's position is *United States v. Griggs*, 651 F.2d 396 (5th Cir. Unit B 1981). In that case a defendant was charged with passing a counterfeit fifty dollar bill at a restaurant and then, only a "little time" later that same evening, attempting to pass another counterfeit fifty dollar bill at a lounge. Both events took place on April 20, 1979. This Court found that the defendant's acquittal for passing the first bill was based upon lack of knowledge that it was counterfeit, and we held that the Government was collaterally estopped from prosecuting the defendant for attempting to pass a second bill just a short time later. This Court reasoned that the two events, which transpired during the defendant's drinking spree that night, were "so intimately related that if the defendant lacked knowledge that the bills were counterfeit in the [restaurant], he also lacked knowledge that a fifty dollar bill in his possession which he attempted to pass in [the lounge] was counterfeit." *Id.* at 400.

However, *Griggs* is a double-edged sword for defendants, because another part of it cuts strongly in favor of the Government. In that case, this Court also held the verdict establishing that Griggs did not know the fifty dollar bills he passed on April 20, 1979 were counterfeit did not collaterally estop conviction of him for the following closely related conduct: conspiring with others between April 1 and August 17, 1979, to publish, pass, sell, and deliver counterfeit fifty dollar bills; selling, transferring, and delivering on April 6 and 17, 1979, twenty counterfeit fifty dollar bills; and possessing on April 6, 1979, an unknown quantity of twenty, fifty, and one hundred dollar bills. *Id.* at 397–400.

*Griggs* illustrates that collateral estoppel can apply where conduct is intimately related in time and place, but it also illustrates how intimately related that conduct must be in order for the doctrine to apply. It all depends on the facts and circumstances.

The facts and circumstances in this case are more complicated than those involving the robbery of a poker game or the passing of two counterfeit bills during one night of drinking. There are similarities and differences between the facts underlying the charges in the two trials in this case. Some of the players and one of the financial institutions overlap, but there are different condominium units involved, although they are all in the same condominium development. The time periods of the two schemes overlap to a substantial extent, but there is some difference there, also. The sales transactions and the misrepresentations took place on different dates. Because Brown's acquittal in the first trial was based on lack of willfulness, the important comparison is between the financial features of the two schemes. Those features are most relevant to whether Brown acted with the "specific intent to do something the law forbids, that is with bad purpose either to disobey or disregard the law," which is how willfulness was defined in the jury instructions at each trial.

Both financing schemes involved the making of false statements to federally insured lending institutions for the purpose of obtaining loans that the institution otherwise would not have made, at least not in the amount loaned. In both schemes the false statements overstated the actual purchase price in order to generate excess funds for use by the coconspirators. Both schemes also misrepresented that the buyers had made down payments or would pay cash at closing, which made it appear the buyers would have an equity stake in the property when actually they would have none. However, the scheme tried in the first case involved the use of straw purchasers; the scheme tried in the second case did not. The schemes also differed in the use of and in misrepresentations about second mortgages. There were no second mortgages or misrepresentations concerning them in the first trial's scheme, but in most of the sales pursuant to the second trial's scheme there were second mortgages and misrepresentations about them. Thus, there were differences between the two financing schemes.

In both trials, Brown supported his defense of lack of willfulness by testifying that he sought legal advice and made in good faith a full disclosure of everything he knew about the scheme in question to a competent attorney, Guion DeLoach, who advised Brown that that scheme was legally permissible. By the time of the first trial, attorney DeLoach had been indicted as a coconspirator with Brown in the second scheme, and he did not testify at either of Brown's trials. In the first trial, Brown testified that he had disclosed to DeLoach everything about the financing scheme involved in that case. DeLoach, in Brown's words, "said *this plan* is fine. He said there is nothing wrong with *this plan*" (emphasis added). At no time during the first trial did Brown or anyone else testify that DeLoach advised Brown that the plan or scheme involved in the second trial was permissible. Evidence of advice of counsel concerning the legality of the second scheme was presented at the second trial, which involved that scheme, but that evidence came too late to define the verdict of the jury in the first trial.

Even if there had been advice of counsel testimony about the second scheme at the first trial, the jury's verdict of acquittal still would not have established Brown's lack of willfulness as to the second scheme, because that second scheme was not charged in the first trial and the jury had no reason to pass on Brown's mental state concerning a somewhat different scheme. The scope of collateral estoppel inquiry is very narrow. It is only what was "*necessarily* determined in a former trial," *United States v. Bennett*, 836 F.2d at 1316 (emphasis in original), that counts. Despite a strong effort, Brown has not carried his heavy burden of establishing that collateral estoppel applies.

Because the doctrine of collateral estoppel did not bar Brown's conviction in the second trial, that conviction is due to be affirmed.

AFFIRMED.