[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 6, 2012
JOHN LEY
CLERK

No. 11-10105

_____

D.C. Docket No. 8:10-cr-00451-JSM-TGW-1

UNITED STATES OF AMERICA,

Petitioner-Appellee,

versus

EMILIANO VALDIVIEZ-GARZA,
a.k.a. Ismael Valdiviez,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 6, 2012)

Before TJOFLAT and BARKETT, Circuit Judges, and SMOAK,[*] District Judge.

BARKETT, Circuit Judge:

_____

[*] Honorable Richard Smoak, United States District Judge for the Northern District of Florida, sitting by designation.

Emiliano Valdiviez-Garza appeals the denial of his motion to dismiss the indictment charging him with one count of illegal reentry by an alien who had been previously removed or deported, in violation of 8 U.S.C. § 1326(a) and (b)(2).[1]  To convict on this charge the Government has to establish beyond a reasonable doubt that Valdiviez-Garza: (1) was an alien at the time of the offense; (2) who had previously been removed or deported; (3) and had reentered the United States after removal; (4) without having received the express consent of the Attorney General.  See United States v. Marte, 356 F.3d 1336, 1345 (11th Cir. 2004) (setting forth the four elements of 8 U.S.C. § 1326(a) in the context of attempted reentry).

Valdiviez-Garza argues here, as he did in the district court, that the indictment must be dismissed because the Government is collaterally estopped from attempting to establish the essential element of alienage because a jury, in a previous federal criminal trial for illegal reentry, found against the Government on this indispensable element.  In that earlier case, Valdiviez-Garza countered the Government's contention of alienage with evidence that he derived United States

---

[1]  The indictment included the additional charge under subsection (b)(2) which provides enhanced penalties for those aliens whose removal was subsequent to a conviction for an aggravated felony.  That additional element of the offense is not at issue in this appeal.

citizenship through his father.[2]

Under the collateral estoppel doctrine, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443 (1970). We have characterized the doctrine as "a narrow exception to the Government's right to prosecute a defendant in separate trials for related conduct," which applies "only where a fact or issue necessarily determined in the defendant's favor in the former trial is an essential element of conviction at the second trial." United States v. Brown, 983 F.2d 201, 202 (11th Cir. 1993).

To determine whether collateral estoppel applies in a criminal proceeding, courts engage in a two-part inquiry. See United States v. Ohayon, 483 F.3d 1281, 1286 (11th Cir. 2007). First, the court must ascertain what facts were necessarily determined during the acquittal at the first trial. See id. "Where a previous judgment of acquittal was based upon a general verdict, as is usually the case," the reviewing court must "examine the record of [the] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter." Ashe, 397 U.S. at 444. In making this determination, a court must decide whether "the jury's

---

[2] Because the collateral estoppel doctrine implicates the constitutional protection against double jeopardy, we have jurisdiction to review the interlocutory decision under the collateral order doctrine. United States v. Quintero, 165 F.3d 831, 833 (11th Cir. 1999).

verdict of acquittal was based upon reasonable doubt about a single element of the crime which the court can identify." Brown, 983 F.2d at 202.  In making this assessment, we "apply the well-recognized presumption that a jury follows its instructions." Id.  Second, the court must decide whether the facts determined as part of the prior acquittal are an essential element of the offense charged in the subsequent proceeding.  See Ohayon, 483 F.3d at 1286.

Because it is not disputed that alienage is essential to the current indictment, the only determination that we must make is whether Valdiviez-Garza's acquittal in the 2009 trial was necessarily based on the jury's reasonable doubt about his alienage.  To resolve this question, we must look at the record of the 2009 trial, "taking into account the pleadings, evidence, charge, and other relevant matter." Ashe, 397 U.S. at 444.

As to the three non-alienage elements necessary to support a conviction for illegal reentry, the Government presented evidence that was not disputed by Valdiviez-Garza that: 1) he was previously deported; 2) and later found in the United States; 3) but without the express consent of the Attorney General to reenter.  The record reflects that the focus of the 2009 trial of Valdiviez-Garza was principally on the element of his citizenship.

In opening statements, the Government indicated that Mr. Valdiviez-Garza

4

would argue that "he's not an alien." Specifically, the Government stated that "the defendant may allege that he believes he is actually a U.S. citizen. If true, then that would be an absolute defense in this case." Validiviez-Garza's attorney, in his opening statement squarely focused on his citizenship. He said "this case is about nothing less than a fundamental matter of citizenship." Further, he said he "expect[ed] the evidence to show . . . you can still have a child that is an American citizen by virtue of . . . a parent's citizenship."

Valdiviez-Garza's attorney cross-examined only one of the Government's witnesses and put on no witnesses of his own. The cross-examination of Michael Fabyanic, the Immigration and Customs Enforcement agent, focused on Valdiviez-Garza's father's birth certificate. Defense counsel elicited testimony that the father's birth certificate listed Texas as his birthplace. Then, at the close of the Government's case, Valdiviez-Garza's attorney made a Rule 29 motion alleging that the Government failed to make its case "with respect to element on, that is, that the Defendant be an alien."

During Valdiviez-Garza's closing argument, his attorney specifically addressed Valdiviez-Garza's father's birthplace and highlighted the jury instruction on how a person could be a U.S. citizen, even if born abroad, when such a person's parent is a U.S. citizen, specifically urging the jury to "find that

(defendant) is a citizen." The jury instructions likewise provided the following:

> If you find that the Defendant is a person who was born outside the United States to one alien parent and one United States citizen parent, the Defendant would be a citizen of the United States at birth if:

>> Prior to the Defendant's birth, you find that Defendant's father was a United States citizen and was physically present in the United States for a period totaling not less than ten years, at least five of which were after attaining the age of fourteen years.

Based on all of the evidence presented on the issue of Valdiviez-Garza's alienage and considering that the evidence of the remaining three non-alienage elements was undisputed, we conclude that "the jury's verdict of acquittal [in the 2009 trial] was based upon reasonable doubt about a single element of the crime." Brown, 983 F.2d at 202. The record of the 2009 trial reflects that the jury necessarily determined that there was reasonable doubt that Valdiviez-Garza was an alien. Because the fact of alienage status is an essential element in the current prosecution for illegal reentry, collateral estoppel applies. See Ohayon, 483 F.3d at 1286; see also United States v. Barragan-Cepeda, 29 F.3d 1378 (9th Cir. 1994) (collaterally estopping Government from litigating alienage in a prosecution under 8 U.S.C. § 1326 where the issue of alienage was necessarily decided in favor of the defendant in an earlier § 1326 prosecution).

Therefore, because the Government is collaterally estopped from arguing

that Valdiviez-Garza is an alien, it cannot prove an essential element of its current case and the indictment must be dismissed.  See United States v. Bennett, 836 F.2d 1314, 1316 (11th Cir. 1984) (barring prosecution completely if fact necessarily determined in former trial is essential element for conviction in present proceeding).[3]

**REVERSED and REMANDED with instructions to DISMISS the indictment.**

---

[3] We note that application of collateral estoppel in this 8 U.S.C. § 1326 illegal reentry prosecution will not have the effect of foreclosing the determination of the issue of alienage in all future proceedings of any sort.  The Supreme Court has explicitly held that "an acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof."  Dowling v. United States, 493 U.S. 342, 349 (1990).  Thus, the issue of Valdiviez-Garza's alienage in any immigration-related proceeding, which applies the lower standard of clear and convincing evidence, may not be foreclosed by the jury's determination in the 2009 federal criminal trial.  All that we have decided here is that the Government is collaterally estopped from litigating the issue of Valdiviez-Garza's alienage in a criminal prosecution for illegal reentry under 8 U.S.C. § 1326.