[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————

No. 20-12147

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

HARRINGTON CAMPBELL,

Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cr-20399-UU-3

————————————

Before WILLIAM PRYOR, Chief Judge, and WILSON and LUCK, Circuit Judges.

PER CURIAM:

Harrington Campbell appeals his conviction and sentence for reentering the United States illegally, 8 U.S.C. § 1326(a), (b)(2). Campbell argues, for the first time, that his statute of conviction is unconstitutional. He also argues that the district court erred by denying his motion for a judgment of acquittal based on the lack of evidence of his intent to enter the United States and that the district court erred by imposing a written, but not orally pronounced, special condition of supervised release. We affirm.

A grand jury indicted Campbell with illegal reentry of a removed alien, *id.*, after he was found within the special maritime and territorial jurisdiction of the United States and having been removed or deported a year earlier.

At trial, the parties stipulated that Campbell was deported or removed from the United States on June 28, 2018. The government presented testimony from Trey Zinke, a marine interdiction agent with Customs and Border Protection. Zinke testified that, on June 9, 2019, he was aboard the vessel that interdicted the boat on which Campbell was aboard 11.7 nautical miles from the United States and within its jurisdiction. The interdicted boat was "riding very heavy in the water" and "there was a lot of weight in the bow of the boat." Several people were in the cabin of the boat, and they appeared to be deflated, scared, and upset based on their facial

expressions and body language. The interdicted boat had a functioning radio and compass.

Special Agent Douglas Doherty with the Department of Homeland Security testified that he interviewed Campbell the next day. Campbell told him that "Marvin Johnson was responsible for smuggling [him] into the United States" and that he had information about another boat interdicted six weeks earlier. Campbell was arrogant and refused to answer any clarifying questions about Johnson unless he was provided with assistance for his "immigration problems." Campbell did not mention the boat taking on water or that he thought that he was going to Freeport, Bahamas, instead of the United States. A records and information specialist for the Department testified that, as of June 9, 2019, Campbell did not have permission to enter the United States.

The government played a recorded deposition of Gloria Benavides, one of Campbell's codefendants who had since been removed. Benavides was a citizen of Colombia who had lived in the United States for about 12 years but had been unable to obtain lawful status. In 2019, she traveled to the Bahamas after hearing that it was easier to get to the United States from there. Because she did not have permission to enter the United States, she paid a man $4,000 to smuggle her. After arriving in Bimini, she was brought to a house where she saw a group of people and a man later identified as codefendant Kenneth Rogers. She and the group boarded a small boat, and she recognized Campbell as being one of the passengers. After a short boat ride, the group from the small boat boarded a

larger boat "quickly." She did not notice any mechanical issues on the small boat, nor was it taking on water, sinking, or running out of fuel. Benavides recognized the captain of the larger boat as the same man, Rogers, whom she had seen at the house in Bimini.

Campbell moved for a judgment of acquittal and argued that the government failed to prove that he intended to reenter the United States. The district court denied the motion.

Campbell testified in his own defense. He was born in Jamaica and entered the United States in 1982 but was removed in June 2018. Six months later, he traveled from Jamaica to the Bahamas where he worked for another six months. In June 2019, he intended to travel by boat from Ocean Key, Bahamas, to Freeport, Bahamas, as arranged by Johnson. After he boarded the small boat with other passengers, the boat left the dock, and they rode for about one hour until "something started going on." The boat started idling, and the water became choppy and started entering the boat. Water came into the boat for over an hour. He saw a larger boat traveling toward them, which the group then boarded. Donald Pinnock, another passenger and one of Campbell's codefendants, tried to stop him from boarding the larger boat. But Pinnock spoke with the captain, Rogers, and obtained a handgun, which he used to hold Campbell at gunpoint "for the Bahamian police." Pinnock held him at gunpoint for the entire trip until the Coast Guard approached.

On cross-examination, Campbell stated that he never paid any money because it was his "friend" Johnson who arranged the

trip to Freeport for him as a favor. After Campbell and the other passengers boarded the larger boat, the driver of the small boat stayed and tried to repair the small boat with tools that Rogers had supplied him. Campbell did not report to the Coast Guard that Pinnock had been holding a gun to his head for the entire trip because he "never had an interaction with the officers" and "there was a lot of tension." After he was taken to land, he waived his rights in writing and spoke to the agents, but he did not tell them about Pinnock holding a gun to his head or about the small boat taking on water. Campbell denied telling agents that Johnson was responsible for smuggling him into the United States.

The district court denied Campbell's renewed motion for a judgment of acquittal. The jury returned a verdict of guilty.

Campbell's presentence investigation report provided that, with a total offense level of 18 and a criminal history category of III, his advisory guideline range was 33 to 41 months of imprisonment. In "Part F," the report recommended two special conditions of supervised release titled, "Surrendering to Immigration for Removal After Imprisonment" and "Unpaid Restitution, Fines, or Special Assessments." The "Surrendering to Immigration" provision stated that Campbell must surrender to immigration officials after completing his term of imprisonment and that, if he is removed and "reenters the United States within the term of supervised release, [he] is to report to the nearest U.S. Probation Office within 72 hours of [his] arrival."

The district court sentenced Campbell to 41 months of imprisonment followed by three years of supervised release. The district court stated that Campbell must comply with the mandatory and standard conditions of supervised release and with the special conditions of "[s]urrendering to Immigration for removal after imprisonment . . . as noted in Part F of the presentence investigation report." Campbell did not object.

In the written judgment of the district court, the "Special Conditions of Supervision" section copied verbatim the "Surrendering to Immigration for Removal After Imprisonment" section of Part F of the report, except that the written judgment required him to receive the prior written permission of the Undersecretary for Border and Transportation Security instead of the Secretary of Homeland Security.

Campbell argues that section 1326 violates the Equal Protection Clause of the Fifth Amendment. But as he concedes, he failed to raise that argument in the district court, so we review the issue for plain error only. *United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010).

The district court did not plainly err. We have held that "[t]he absence of a decision by either [the Supreme Court or this] Court rules out a holding that the asserted error was 'plain' because there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Bolatete*, 977 F.3d 1022, 1036 (11th Cir. 2020) (quotation marks omitted). Neither the Supreme Court nor this Circuit has ruled that

section 1326 violates the Equal Protection Clause, so Campbell cannot establish any plain error. *See id.*; *Wright*, 607 F.3d at 715.

Campbell argues that the district court erred by denying his motion for a judgment of acquittal because the government failed to present sufficient evidence of his knowledge or intent to enter the United States. We review the denial of a motion for judgment of acquittal *de novo*. *United States v. Maurya*, 25 F.4th 829, 841 (11th Cir. 2022). We review the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict. *United States v. Ignasiak*, 667 F.3d 1217, 1227 (11th Cir. 2012). Under section 1326(a), the government must prove that the defendant "(1) was an alien at the time of the offense; (2) who had previously been removed or deported; (3) and had reentered the United States after removal; (4) without having received the express consent of the Attorney General." *United States v. Valdiviez-Garza*, 669 F.3d 1199, 1201 (11th Cir. 2012). Because specific intent is not an element of the offense, the government may prove the defendant's general intent by showing that he took a voluntary act by reentering the United States. *See United States v. Henry*, 111 F.3d 111, 113–14 (11th Cir. 1997).

The district court did not err by denying Campbell's motion for a judgment of acquittal because there was sufficient evidence that he intended to reenter the United States. Agent Doherty testified that Campbell told him that Johnson was responsible for smuggling him into the United States and referenced wanting help with

his "immigration problems." Although Campbell denied making the statement, the jury was entitled to believe Agent Doherty's testimony. *See Ignasiak*, 667 F.3d at 1227. Benavides stated in her deposition that she boarded the same small boat with Campbell and was transferred to the larger boat with him and a group of passengers after paying $4,000 to be smuggled into the United States. Benavides's testimony that she noticed no mechanical issues and that the small boat was not taking on water, sinking, or running out of fuel contradicted Campbell's testimony that the small boat was idling in choppy water and taking on water for over an hour. *See id.* Campbell testified that he was held at gunpoint on the larger boat for several hours but acknowledged that he did not mention this duress until his trial. By testifying in his defense that he was effectively kidnapped by Pinnock and Rogers after being rescued from a boat that another passenger testified was never in trouble, Campbell ran the risk that the jury would disbelieve him and infer that the opposite of his testimony was true. *See United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995) ("[A] statement by a defendant, if disbelieved by the jury, may be considered as *substantive evidence* of the defendant's guilt.").

Campbell contends that the district court erred by imposing, without orally pronouncing, a special condition of supervised release that requires him to report to probation within 72 hours of any post-removal reentry to the United States within his term of supervised release. But the oral pronouncement tracked the two headings in Part F of the presentence investigation report. The requirement that Campbell report to probation upon reentering the

United States was part of the "Surrendering to Immigration" condition, with which the district court stated he must comply "as noted in Part F of the presentence investigation report."

Insofar as Campbell challenges the special condition itself, we disagree that the condition is "more burdensome than necessary." The condition reasonably relates to the statutory sentencing factors, 18 U.S.C. § 3553(a), of deterring future criminal conduct and protecting the public, following Campbell's prior conviction of a serious narcotics offense. *See United States v. Carpenter*, 803 F.3d 1224, 1237–38 (11th Cir. 2015). And he fails to develop his argument that the condition deprives him of more liberty than is necessary and does not argue that the condition is inconsistent with relevant policy statements issued by the Sentencing Commission. *See id.* at 1238; *United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022).

We **AFFIRM** Campbell's conviction and sentence.