**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 23-11073

_____

TIMOTHY BOYLE

Plaintiff-Appellant,

versus

TERRY RABON, WARDEN, HOLMAN CORRECTIONAL
FACILITY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 4:18-cv-01966-LSC

_____

Before WILLIAM PRYOR, Chief Judge, and JORDAN and LAGOA, Circuit Judges.

PER CURIAM:

Timothy Boyle, an Alabama prisoner sentenced to death for capital murder of a child less than fourteen years of age, appeals

the denial of his petition for a writ of habeas corpus. 28 U.S.C. § 2254. This Court granted a certificate of appealability ("COA") as to a single issue: "[w]hether the state court unreasonably applied constitutional law in finding that the trial court's jury instructions did not violate due process." For the reasons discussed below, we affirm the district court's denial of habeas corpus relief.

## I.    FACTUAL AND PROCEDURAL HISTORY

The facts underlying Boyle's conviction were described by the Alabama Court of Criminal Appeals ("ACCA") on direct appeal. *See Boyle v. State*, 154 So. 3d 171, 183 (Ala. Crim. App. 2013). We summarize them below.

On October 26, 2005, the day after her second birthday, Savannah White was declared dead from an anoxic injury after being battered to death by her mother's boyfriend, Timothy Boyle. That morning, Boyle carried Savannah into the emergency room of the Riverview Regional Medical Center in Gadsden, Alabama. She was unresponsive with bruising on her forehead, a cigarette burn on her foot, and fresh red marks on her neck. *Id.* at 183. Boyle gave three different accounts of what had happened: he first claimed he had given her too much Tylenol, then said he found her with a sheet wrapped around her neck, and finally he told Savannah's mother that he had heard her crying, tried to quiet her, and could not get her to stop.

Dr. James Lauridson, the forensic pathologist who performed Savannah's autopsy, testified that Savannah died from cerebral edema due to blunt-force trauma to her head. *Id.* Her injuries

spanned the circumference of her skull, and her brain had swelled so severely that brain tissue broke off and was forced into her spinal cord. *Id.*

Several witnesses testified at trial regarding a pattern of abuse. Savannah's five-year-old sister, H.D. (nine years old at the time of trial), testified that about a week before the murder, Boyle slammed Savannah's head against a car door. *Id.* at 183–84. The night before her death, Boyle burst into the bathroom while H.D. was bathing, threw her against the wall, and later threw Savannah against the bathtub wall and dunked her head under water multiple times. *Id.* at 184. The two girls slept together, and H.D. testified that Savannah cried extensively that night, vomited on the bed, and that Boyle repeatedly entered the room ordering Savannah to go to sleep and slapping her. *Id.* The next morning H.D. could not wake her sister, and Boyle took her to the hospital. *Id.* at 183–84.

Neighbor Kim Parr testified that Savannah began screaming when Boyle was around and that she had observed bruises and a cigarette burn on the child days earlier. *Id.* at 184. Parr photographed the injuries and contacted the Department of Human Resources ("DHR") a few days before Savannah's death. *Id.* She also saw Savannah the night before her death and confirmed that she was otherwise fine. *Id.* The next morning, Boyle called Parr repeatedly from the emergency room asking her to remove drugs from the apartment. *Id.* Sergeant Charles Clifton, with the Cherokee County Sheriff's Office, testified that he searched Savannah's residence after being informed that Boyle asked his neighbor to

remove some pills from his master bedroom. *Id*. at 185. Clifton discovered a crack pipe and several pills, later identified as oxycodone. Law enforcement also seized vomit-stained sheets, pills (oxycodone, clonazepam, and methylphenidate), and a crack pipe from the residence. *Id*.

In December 2006, Boyle was indicted for capital murder of a child under fourteen years of age pursuant to Ala. Code § 13A-5-40(a)(15) (1975), and for unlawful possession of a controlled substance, in violation of Ala. Code § 13A-12-212(a)(1) (1975).

Of significance to this appeal, during the guilt-phase charge conference, defense counsel expressed satisfaction with the court's general instructions, and the trial court agreed to give a requested charge on specific intent to kill. After closing arguments, the trial court instructed the jury, in relevant parts, as follows:

> Ladies and gentlemen, the defendant is charged in the indictment with capital murder. Section 13A-5-40(a)(15) of the Code of Alabama, 1975 states "Capital murder is murder when the victim is less than 14 years of age".
>
> In conjunction with this statute, murder is defined under Section 13A-6-2(a)(1). A person commits the crime of murder if he or she does the following: With intent to cause the death of another person, he or she causes the death of another person.
>
> [. . .]

Intent, ladies and gentlemen, is defined and a person acts intentionally with respect to a result or to conduct described by statute defining an offense when his purpose is to cause that result or to engage in that conduct.

[. . .]

Intent, being a state or condition of the mind, is rarely, if ever, susceptible of direct or positive proof and must usually be inferred from the facts testified to by the witnesses and the circumstances as developed by the evidence.

Intent must be specific and real in a capital murder case. The defendant must act intentionally as opposed to negligently, accidently [sic] or recklessly to cause the death of the deceased in order to convict the defendant of guilt of capital murder.

You act intentionally with respect to a result or to conduct when you have the purpose to cause that result or to engage in that conduct. Intent is to be determined by the surrounding circumstances and by the actions, if any, of the defendant.

During deliberations, the jury requested that the trial court either give them a copy of the law or reinstruct them on the "word 'intent' when it comes to the charge of manslaughter or capital murder." After discussing the issue with counsel, the court re-instructed the jury as follows:

> A person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his purpose is to cause that result or to engage in that conduct.
>
> Intent is to be determined by the surrounding attendant circumstances and by the actions, if any, of the defendant.

Counsel for both sides indicated they were satisfied with the reinstruction and had no objections.

The jury convicted Boyle of one count of capital murder for the death of two-year-old Savannah, and one count of unlawful possession of a controlled substance. *Id.* at 183. The penalty phase immediately followed, and the jury unanimously recommended the death penalty for Boyle's capital-murder conviction. *Id.* at 185. The state court followed the jury's recommendation and sentenced Boyle to death on his capital-murder conviction and ten years' imprisonment for his possession conviction. *Id.* at 183, 185.

Following his conviction and sentence, Boyle appealed to the ACCA. On direct appeal, Boyle challenged the intent instructions, arguing that the instructions allowed a conviction based on intent to engage in conduct without the specific intent to kill, relieving the state of its burden of proof in violation of due process. *Id.* at 216. Because Boyle failed to object to the intent instructions, the ACCA reviewed the instructions for plain error under Rule 45A, Ala. R. App. P. The ACCA affirmed the conviction and sentence. With respect to the intent instructions, the ACCA

concluded that "[t]here is no reasonable likelihood that the jurors applied the challenged instruction in an improper manner," because "[t]he jury was instructed that in order to convict Boyle of capital murder the jury had to find that Boyle had the specific intent to kill." *Id*. at 217. Both the Alabama Supreme Court and the United States Supreme Court denied certiorari. *Ex parte Boyle*, No. 1121544 (Ala. Apr. 18, 2014); *Boyle v. Alabama*, 574 U.S. 1030 (2014).

In April 2015, Boyle filed a petition for postconviction relief pursuant to Rule 32 of the Alabama Rules of Criminal Procedure raising several grounds for relief. The Alabama circuit court summarily dismissed Boyle's claims as insufficiently pleaded without holding an evidentiary hearing.

In April 2018, the ACCA decided another case in which a defendant, who had been prosecuted for striking a child, resulting in that child's death, challenged the circuit court's intent instructions. *Towles v. State*, 263 So. 3d 1076 (Ala. Crim. App. 2018). The court in *Towles* clarified that it was overruling its opinion in *Boyle* to the extent that it could be read "to imply that the State could establish capital murder without proving that the defendant specifically intended to kill." *Id*. at 1085 n.3.

In November 2018, Boyle filed a federal habeas petition in the Northern District of Alabama. After briefing, the district court, in a detailed written opinion, denied relief and found that the state courts' adjudication of the intent-instruction claim was neither contrary to nor an unreasonable application of clearly established federal law.

Boyle then filed a motion requesting a COA from this Court on five of the issues raised in the habeas petition. We granted a COA only as to a single issue: "[w]hether the state court unreasonably applied constitutional law in finding that the trial court's jury instructions did not violate due process."

## II.    STANDARD OF REVIEW

We review de novo the denial of a petition for a writ of habeas corpus. *King v. Warden, Ga. Diagnostic Prison*, 69 F.4th 856, 867 (11th Cir. 2023). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we must give state court decisions "the benefit of the doubt." *Id.* (citations and internal quotation marks omitted). We cannot set aside a state court's adjudication of the claims below unless it was "either contrary to, or involved an unreasonable application of, clearly established federal law or was an unreasonable determination of the facts in the light of the evidence." *Id.* (citation and internal quotation marks omitted). "A state court unreasonably applies federal law only if no fairminded jurist could agree with the state court's determination or conclusion." *Id.* (citation and internal quotation marks omitted). "We evaluate the reasons offered by the court, but if we can justify those reasons on a basis the state court did not explicate, the state-court decision must still stand." *Id.* (citing *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1036 (11th Cir. 2022) (en banc)).

### III.    ANALYSIS

The sole issue before this Court is "[w]hether the state court unreasonably applied constitutional law in finding that the trial court's jury instructions did not violate due process."

A jury instruction that relieves the State of proving every element of the offense beyond a reasonable doubt violates due process. *Sandstrom v. Montana*, 442 U.S. 510, 512 (1979). But jury instructions must be evaluated as a whole, not in isolation. *Boyde v. California*, 494 U.S. 370, 378 (1990). Relief is warranted only if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way" that violated the Constitution. *Id.* at 380. Under AEDPA, we must defer to the state court's adjudication unless it was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1).

Boyle first argues the jury was erroneously instructed that they could rely on "intent to engage in conduct," rather than the specific intent to kill in deciding Boyle's guilt. His theory is that, by defining intent as the "purpose to engage in conduct," the jury instructions improperly permitted the jury to find that Boyle had the intent necessary for capital murder so long as he intended to engage in the underlying conduct which led to Savannah's death. Boyle is incorrect.

The trial court repeatedly and explicitly instructed the jury that capital murder required the specific intent to cause the death of another person. In its main charge, the court first stated:

> In conjunction with this statute, murder is defined under Section 13A-6-2(a)(1). A person commits the crime of murder if he or she does the following: With intent to cause the death of another person, he or she causes the death of another person.

The court then gave the general definition of intent from Ala. Code § 13A-2-2(1):

> Intent, ladies and gentlemen, is defined and a person acts intentionally with respect to a result or to conduct described by statute defining an offense when his purpose is to cause that result or to engage in that conduct.

> [. . .]

> You act intentionally with respect to a result or conduct when you have the purpose to cause that result or to engage in that conduct. Intent is to be determined by the surrounding circumstances and by the actions, if any, of the defendant.

During deliberations, the jury asked for the intent instruction to be repeated as it related to manslaughter or capital murder. The court re-instructed the jury as follows:

> A person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his purpose is to cause that result or to engage in that conduct.

Intent is to be determined by the surrounding attendant circumstances and by the actions, if any, of the defendant.

Viewed as a whole, the ACCA did not act unreasonably in holding that these instructions convey that to convict Boyle of capital murder, the jury must find that Boyle had the specific intent to cause Savannah's death. The "conduct" referred to in the instructions was murder as defined under the Alabama Code. And the trial court's explicit statements of the capital murder *mens rea* element—acting "with intent to cause the death of another person"—eliminated any reasonable likelihood that the jury would convict based solely on intent to engage in non-lethal conduct. *See United States v. Brown*, 983 F.2d 201, 202-03 (11th Cir. 1993) (applying the "well-recognized presumption that a jury follows its instructions") (collecting cases). Due process is satisfied because there is no "reasonable likelihood" that the jury applied the instructions in a way that relieved the State of its burden to prove every element. *Boyde*, 494 U.S. at 380.

Moreover, because defense counsel made no objection to the trial court's jury instructions on intent—either when first given or when the court reinstructed the jury during deliberations—the ACCA reviewed the claim solely for plain error. The ACCA's rejection of Boyle's challenge under the deferential plain error standard is itself entitled to substantial AEDPA deference. A state court's application of its own plain error rule in rejecting a constitutional claim does not become an unreasonable application of clearly

established federal law merely because a federal court might have analyzed the unobjected-to instruction differently in the first instance.

For the same reasons stated above, we reject Boyle's second argument that the erroneous instructions had a substantial and injurious effect on the jury's verdict. Given the instructions that capital murder requires intent "to cause the death of another person," the trial court did not permit conviction on an improper basis.

Boyle's third argument fares no better. Boyle relies heavily on *Towles*, claiming it overruled the relevant portions of his direct appeal. This argument is misplaced. In *Towles*, the ACCA overruled only a narrow portion of the *Boyle* opinion discussing the *sufficiency of evidence* claim—specifically, language suggesting that the intent to kill might be inferred from the vicious character of an assault—rather than its discussion of the trial court's jury instructions. *Towles*, 263 So. 3d at 1085 n.3 (overruling *Boyle*, 154 So. 3d at 223). In *Towles*, the State incorrectly informed the jury that it could establish the intent element of capital murder by showing that Towles knew that there was a reasonable likelihood that his actions would seriously harm the child. *Id.* at 1084. Critically, the defective instruction in *Towles*, that "knowledge of the probability of death or great bodily harm is sufficient to constitute murder," was not given in Boyle's case. *Id.* Because, unlike here, the jury instructions in *Towles* were a misstatement of the law, *id.* at 1085, *Towles* does not offer Boyle an avenue for habeas relief, as it does not invalidate

the jury instructions given in Boyle's trial or the ACCA's plain-error analysis of those instructions.

We thus conclude that the ACCA's ruling on the intent instructions was neither contrary to, nor involved an unreasonable application of, clearly established federal law.

## IV.    CONCLUSION

For the reasons stated, we thus affirm the district court's denial of Boyle's petition for a writ of habeas corpus.

**AFFIRMED.**